| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Ira G. Rivin (State Bar No. 62530)<br>Irivin@rutan.com<br><br>Roger F. Friedman (State Bar No. 186070)<br>Rfriedman@rutan.com<br><br>RUTAN & TUCKER, LLP<br>611 Anton Boulevard, Suite 1400<br>Costa Mesa, California 92626-1931<br>Telephone: 714-641-5100<br>Facsimile: 714-546-9035<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>GREGORY SIMS, | CASE NO.: 2:19-bk-12048-SK |
|---|---|
| | CHAPTER: 13 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| | DATE: 05/15/2019 |
| | TIME: 8:30 a.m. |
| Debtor(s). | COURTROOM: 1575 |

**Movant:** First Bank Financial Centre, a Wisconsin Banking Corporation

1. **Hearing Location:**

   ☒ 255 East Temple Street, Los Angeles, CA 90012       ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee *(if any)*(Responding Parties), their attorneys *(if any),* and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1 .RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                     Page 1                                     **F 4001-1.RFS.RP.MOTION**

13659957

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☐ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1 (d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☒ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) May 8, 2019 and (time) _____; and, you may appear at the hearing.

   a.  ☒ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  04/25/2019                          RUTAN & TUCKER, LLP
                                           Printed name of law firm (if applicable)

                                           Roger F. Friedman
                                           Printed name of individual Movant or attorney for Movant


                                           /s/ Roger F. Friedman
                                           Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                  Page 2                          F 4001-1.RFS.RP.MOTION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other *(specify):*

2. **The Property at Issue (Property):**

   a. Address:

   *Street address:* 1161 Parkview Drive
   *Unit/suite number:*
   *City, state, zip code:* Covina, CA 91724

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit _____):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary bankruptcy petition under chapter   ☐ 7 ☐ 11 ☐ 12 ☒ 13
   was filed on *(date)* _____.

   b. ☐ An order to convert this case to chapter  ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on *(date)* _____.

   c. ☐ A plan, if any, was confirmed on *(date)* _____.

4. **Grounds for Relief from Stay:**

   a. ☐ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

      (1) ☐ Movant's interest in the Property is not adequately protected.

         (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

      (2) ☒ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

         (B) ☒ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

         (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

         (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

         (E) ☒ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

         (F) ☐ Other *(see attached continuation page).*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                Page 3                           **F 4001-1.RFS.RP.MOTION**

(3) ☒ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☒ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☒ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other *(specify):*

6. **Evidence in Support of Motion:** *(Declaration(s) MUST be signed under penalty of perjury and attached to this motion)*

a. The REAL PROPERTY DECLARATION on page 6 of this motion. (N/A)

b. ☒ Supplemental declaration(s). **See attached Declarations of Michael Kenworthy and Ira Rivin and Exhibits attached thereto.**

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☐ Other:

7. ☒ An optional Memorandum of Points and Authorities is attached to this motion.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                                            Page 4                                                    **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2) 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☐ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4. ☐ Confirmation that there is no stay in effect.

5. ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9. ☒ Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☒ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice, or  ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
   ☐ without further notice, or  ☒ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐ If relief from stay is not granted, adequate protection shall be ordered.

14. ☐ See attached continuation page for other relief requested.

Date: 04/25/2019

RUTAN & TUCKER, LLP
Printed name of law firm *(if applicable)*
Roger F. Friedman
Printed name of individual Movant or attorney for Movant

/s/ Roger F. Friedman
Signature of individual Movant or attorney for Movant

# REAL PROPERTY DECLARATION

I, *(print name of Declarant)* _____ (See Attached Declarations) _____ , declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because *(specify):*

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as *(state title and capacity):*

   c. ☐ Other *(specify):*

2. a. ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other *(see attached):*

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g. ,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

   c. ☐ Servicing agent authorized to act on behalf of the:
   ☐ Holder.
   ☐ Beneficiary.

   d. ☐ Other *(specify):*

4. a. The address of the Property is:

   *Street address:*
   *Unit/suite no.:*
   *City, state, zip code:*

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                     Page 6                                     **F 4001-1.RFS.RP.MOTION**

5. Type of property *(check all applicable boxes):*

   a. ☐ Debtor's principal residence      b. ☐ Other residence
   c. ☐ Multi-unit residential            d. ☐ Commercial
   e. ☐ Industrial                        f. ☐ Vacant land
   g. ☐ Other *(specify):*

6. Nature of the Debtor's interest in the Property:

   a. ☐ Sole owner

   b. ☐ Co-owner(s) *(specify):*

   c. ☐ Lienholder *(specify):*

   d. ☐ Other *(specify):*

   e ☐ The Debtor ☐ did ☐ did not list the Property in the Debtor's schedules.

   f ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
     The deed was recorded on *(date)* _____.

7. Movant holds a ☐ deed of trust ☐ judgment lien ☐ other *(specify)* _____
   that encumbers the Property.

   a. ☐ A true and correct copy of the document as recorded is attached as Exhibit _____.

   b. ☐ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
     attached as Exhibit _____.

   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
     trust to Movant is attached as Exhibit _____.

8. Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ |
| b. | Accrued interest: | $ | $ | $ |
| c. | Late charges | $ | $ | $ |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ |
| e. | Advances (property taxes, insurance): | $ | $ | $ |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[          ] |
| g. | TOTAL CLAIM as of *(date)*: | $ | $ | $ |

   h. ☐ Loan is all due and payable because it matured on *(date)* _____

9. Status of Movant's foreclosure actions relating to the Property *(fill the date or check the box confirming no such action
   has occurred):*

   a. Notice of default recorded on *(date)* _____ or ☐ none recorded.

   b. Notice of sale recorded on *(date)* _____ or ☐ none recorded.

   c. Foreclosure sale originally scheduled for *(date)* _____ or ☐ none scheduled.

   d. Foreclosure sale currently scheduled for *(date)* _____ or ☐ none scheduled.

   e. Foreclosure sale already held on *(date)* _____ or ☐ none held.

   f. Trustee's deed upon sale already recorded on *(date)* _____ or ☐ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                              Page 7                              **F 4001-1.RFS.RP.MOTION**

10. Attached *(optional)* as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ *(chapter 7 and 11 cases only)* Status of Movant's loan:

    a.  Amount of current monthly payment as of the date of this declaration: $ _____ for the month of _____ 20__.

    b.  Number of payments that have come due and were not made: _____. Total amount: $ _____

    c.  Future payments due by time of anticipated hearing date *(if applicable)*:

        An additional payment of $ _____ will come due on *(date)* _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $ _____ will be charged to the loan.

    d.  The fair market value of the Property is $ _____, established by:

        (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

        (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

        (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

        (4) ☐ Other *(specify)*:

    **e.  Calculation of equity/equity cushion in Property:**

        Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor *(if any)* | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT:** $ | | | |

    f.  Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

        (1) ☐ Preliminary title report.

        (2) ☐ Relevant portions of the Debtor's schedules.

        (3) ☐ Other *(specify)*:

    g.  ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
        I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ _____ and is _____% of the fair market value of the Property.

    h.  ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
        By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ _____.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                    Page 8                    F 4001-1.RFS.RP.MOTION

i. ☐ Estimated costs of sale: $ _____ (estimate based upon _____ % of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: _____.
   A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
   A plan was confirmed on the following date *(if applicable)*: _____.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:          $
   *(For details of type and amount, see Exhibit _____)*

e. Attorneys' fees and costs:          $
   *(For details of type and amount, see Exhibit _____)*

f. Less suspense account or partial paid balance:          $[          ]

                    TOTAL POSTPETITION DELINQUENCY:          $

g. Future payments due by time of anticipated hearing date *(if applicable)*: _____.
   An additional payment of $ _____ will come due on _____, and on
   the _____ day of each month thereafter. If the payment is not received by the _____ day of the month, a late
   charge of $ _____ will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

   $ _____  received on *(date)* _____
   $ _____  received on *(date)* _____
   $ _____  received on *(date)* _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
   A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
   13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT. TRUSTEE).*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 9                                    **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on *(date)* _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on *(date)*_____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

   a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

   b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   d. ☐ Other *(specify)*:

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

   a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

   b. ☐ Multiple bankruptcy cases affecting the Property include:

      1. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged:_____   Date filed: _____
         Relief from stay regarding the Property ☐ was   ☐ was not granted.

      2. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged:_____   Date filed: _____
         Relief from stay regarding the Property ☐ was   ☐ was not granted.

      3. Case name: _____
         Chapter: _____   Case number: _____
         Date dismissed: _____   Date discharged:_____   Date filed: _____
         Relief from stay regarding the Property ☐ was   ☐ was not granted.

   ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

   ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                                    Page 10                        F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____    _____    _____
*Date*                    *Printed name*                      *Signature*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                    Page 11                    **F 4001-1.RFS.RP.MOTION**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Creditor First Bank Financial Centre, a Wisconsin banking corporation ("FBFC"), brings this motion for relief from the automatic stay in response to a bad faith bankruptcy filing by debtor Gregory Sims (the "Debtor"). The filing was designed to prevent an impending foreclosure sale of commercial property in which the Debtor held no interest until the day before the originally scheduled foreclosure sale. On that day FBFC's borrower purportedly transferred to the Debtor a two percent interest in the property, and the Debtor concurrently filed his Chapter 13 petition. FBFC hereby seeks relief from the automatic stay to exercise its state law remedies with respect to the property, which is commonly described as 1161 Park View Drive, Covina, CA 91724 (the "Property").

Confirming the bad faith nature of the filing, the Debtor has failed to comply with his basic statutory obligations in the case. As reflected in the Objections to Plan Confirmation ("Objections") recently filed by the Chapter 13 Standing Trustee ("Trustee"), the Debtor has failed to meet the mandatory requirements of 11 U.S.C. §1325 to avail himself of the protections of Chapter 13. (See Docket, Doc. #17.) As of the date of this Motion, the Debtor has cured none of the deficiencies identified in the Objections.

Based on the foregoing, cause exists for the Court to grant FBFC relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code. Relief is separately appropriate under Section 362(d)(4), which squarely applies to this situation – in which the Debtor (1) was given a partial interest in property subject to FBFC's deed of trust (i.e., the Property) and (2) concurrently filed his Petition as part of a scheme to delay or hinder FBFC's exercise of its rights regarding the Property. Accordingly, the Court should grant FBFC relief from the automatic stay and permit FBFC to proceed immediately with all applicable state law remedies under Sections 362(d)(1) and 362(d)(4).

## II.

## FACTUAL BACKGROUND

On or about April 21, 2016, FBFC loaned LTB Investments Inc. and BE Commercial Real Estate Inc. ("jointly, the Borrowers") the sum of $3,090,000 (the "Loan"). (See attached Declaration of Michael Kenworthy ("Kenworthy Decl."), ¶ 3.) The Borrowers' obligation to repay the Loan is evidenced by a variable rate Note executed by the Borrowers (the "Note") and is secured by a Deed of Trust executed by Borrowers as "Grantor" dated April 21, 2016 (the "Deed of Trust") conveying a security interest in the Property. (*Id.*) Copies of the Note and Deed of Trust are attached to these moving papers as Exhibits "A" and "B," respectively. (*Id.*)

The Note required the Borrowers to make initial monthly installment payments in the amount of $19,439.39 to FBFC. Monthly payments were to continue monthly until the loan matured in 25 years, at which time all remaining principal and interest came due.

Following the Borrowers' default on their obligations under the Note in approximately June 2018, FBFC, the Borrowers and the Guarantors entered into a Loan Deferral and Modification Agreement (SBA Loan) dated July 19, 2018 (the "Loan Modification Agreement"), a copy of which is attached hereto as Exhibit C. (Kenworthy Decl., ¶ 4.) The Borrowers thereafter again defaulted on their obligations under the Note, as amended by the Loan Modification Agreement, by failing to make the installment payments owing on August 25, 2018, and September 25, 2018, in the amount of $21,755.88 each. (*Id.*) The Borrowers have failed to make any further payments on the Loan. (*Id.*)

On October 18, 2018, FBFC caused Chicago Title Company (as substituted trustee under the Deed of Trust) to record a Notice of Default and Election to Sell Under Deed of Trust (the "Notice of Default"). (Ira G. Rivin Declaration ("Rivin Decl."), ¶ 3.) FBFC thereafter caused to be recorded a Notice of Trustee's Sale (the "Notice of Sale"), scheduling the foreclosure sale of the Property for February 27, 2019. (*Id.*). Copies of the Substitution of Trustees and the Notice of Default are attached to these moving papers as

1   Exhibit "D." (*Id.*)  The Notice of Sale is attached as Exhibit "E."  (*Id.*)  FBFC twice

2   postponed the sale, each time for two weeks, and the sale was ultimately scheduled to

3   proceed on March 27, 2019.  (*Id.*)

4         On March 26, 2019, Chicago Title sent counsel for FBFC notification that the

5   foreclosure sale needed to be postponed due to an apparent transfer of an interest in the

6   Property to the Debtor and a bankruptcy filing by the Debtor.  (Rivin Decl., ¶ 4.)  The

7   papers received from Chicago Title (attached to these moving papers as Exhibit "F")

8   included a Grant Deed recorded on February 26, 2019, the day before the originally

9   scheduled foreclosure sale, reflecting the transfer of a two percent interest in the Property

10  from one of the Borrowers to the Debtor.  (*Id.*)  (A copy of the Grant Deed is found at the

11  sixth and seventh pages of Exhibit F.)  Interestingly, the Grant Deed is dated June 6, 2018,

12  but the notary block reflects that it was signed on February 25, 2019.  Also unusual is the

13  fact that it was the Grantor, not the Debtor, who requested the recording of the Grant Deed.

14  (See top left corner of the first page of the Grant Deed.)

15        The Debtor filed a voluntary bankruptcy petition under Chapter 13 of Title 11 of the

16  United States Code (the "Bankruptcy Code") on February 26, 2019, the same day the

17  Grant Deed was recorded and the day prior to the originally scheduled foreclosure sale.

18  When FBFC found out about the filing the day before the eventual March 27 sale date, it

19  instructed Chicago Title to postpone the foreclosure sale.  (Rivin Decl. at ¶ 5.)  The sale

20  will be continued from time to time as needed pending the entry of an order for relief from

21  the automatic stay or another order from the Court that permits the sale to proceed.  (*Id.*)

22        The following amounts were owed under the Note as of February 26, 2019, the day

23  before the Chapter 13 filing:

| Principal | $3,003,903.00 |
|---|---|
| Pre-petition advances for insurance & other expense | $71,240.83 |
| Pre-petition late fees | $11,674.25 |
| Accrued but Unpaid Interest through 2/26/19 (Est.) | $133,077.19 |

| Foreclosure and Legal Fees | $31,225.42 |
|---|---|
| Total due | $3,251,120.69 |

(Kenworthy Decl. at ¶ 5.)

### III.

### ARGUMENT

1. **The Debtor's Lack of Good Faith In Commencing This Chapter 13 Case Constitutes "Cause" To Grant FBFC Relief From the Automatic Stay Under Section 362(d)(1).**

   While the filing of a bankruptcy petition creates an automatic stay as to the debtor, Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1). As a general matter, there is no clear definition of what constitutes "cause" within the meaning of section 362(d)(1) of the Bankruptcy Code, so relief from stay on this basis is discretionary and must be determined on a case by case basis. *See MacDonald v. MacDonald (In re MacDonald)* 755 F.2d 715, 717 (9th Cir. 1985).

   It is well established, however, that Section 362(d)(1) is broad. (*See In re A Partners, LLC*, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006) ["The term 'cause' as used in § 362(d)(1) 'is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations.'" (Internal citations omitted.)].) Once a court finds that "cause" exists, relief from the automatic stay is mandatory. *See* 11 U.S.C. § 362(d) ("the court shall grant relief from stay . . . for cause") (emphasis added).

   "Cause" includes commencing a bankruptcy case in bad faith. *See Idaho Dept. of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986) (citations omitted). Commencing a bankruptcy case solely to avoid foreclosure constitutes bad faith if the debtor lacks the intention to attempt to quickly and efficiently reorganize on a feasible

1  basis. *See Meadowbrook Investors Group v. Thirtieth Place, Inc. (In re Thirtieth Place,*

2  *Inc.)*, 30 B.R. 503, 505 (B.A.P. 9th Cir. 1983).

3       The Borrowers have made no payments on the Loan for nine months.  When it

4  became clear that the Borrowers would not be paying the debt, FBFC commenced

5  foreclosure proceedings.  One day before the originally-scheduled foreclosure sale, one of

6  the Borrowers appears to have transferred a two percent interest in the subject Property to

7  the Debtor, who immediately commenced this bankruptcy case.  It is noteworthy that the

8  Debtor did not immediately notify the foreclosure trustee of the bankruptcy filing.  Notice

9  was withheld when FBFC twice postponed the sale.  Not until the sale was set to proceed

10  on March 27, 2019, did the trustee receive notice.

11       Moreover, as noted in the Chapter 13 Trustee's Objections to Plan Confirmation

12  (Docket, Doc. #17), the Debtor has failed to "meet all of the mandatory requirements set

13  forth under 11 U.S.C. §1325 and Local Rules."  Among the documents not furnished are

14  Federal Tax Returns and proof of income.  It is virtually impossible to dispute the

15  conclusion that this bankruptcy case was commenced in bad faith, in a blatant scheme to

16  hinder and delay FBFC's exercise of its state law remedies.

17  **2.**    **FBFC Is Entitled To Relief From Stay Under 11 U.S.C. 362(d)(4).**

18       Section 362(d)(4) squarely applies to the facts on which FBFC bases the Motion.

19  Section 362(d)(4) states in pertinent part:

20          (d)    On request of a party in interest and after notice and a

hearing, the court shall grant relief from the stay provided under

21  subsection (a) of this section, such as by terminating, annulling,

modifying, or conditioning such stay –

22

. . . . . .

23

24          (4)    with respect to a stay of an act against real

property under subsection (a), by a creditor whose claim is

25  secured by an interest in such real property, if the court finds

that the filing of the petition was part of a scheme to delay,

26  hinder, or defraud creditors that involved . . . –

27

28

Rutan & Tucker, LLP
*attorneys at law*

106/034504-0002
13612737.1 a04/19/19

-16-

1            (A)    transfer of all or part ownership of,
or other interest in, such real property without the
2    consent of the secured creditor or court approval.

3

4    The facts of this case fit squarely within this section. The filing of the petition in this case

5    (1) was part of a scheme to delay or hinder FBFC's foreclosure proceedings and

6    (2) involved the transfer of part ownership of the Property without FBFC's consent or

7    court approval. FBFC therefore is entitled to relief from the automatic stay as to the

8    Property under section 362(d)(4).

9    **IV.**

10    <u>**CONCLUSION**</u>

11         Based on all of the foregoing, FBFC respectfully submits that it is entitled to relief

12    from the automatic stay under 11 U.S.C. §§ 362(a) and (d).

13         **WHEREFORE,** FBFC respectfully requests that the Court enter an Order:

14        (1)    Granting the Motion;

15        (2)    Terminating and lifting the automatic stay in the Debtor's case;

16        (3)    Permitting FBFC to proceed with its state law remedies with respect to the

17    Property;

18        (4)    Waiving the ten-day stay prescribed by Rule 4001(a)(3) of the Federal Rules

19    of Bankruptcy Procedure; and

20        (5)    Granting such other and further relief as is just and equitable under the

21    circumstances of this case.

22

23    Dated: April 19, 2019            RUTAN & TUCKER, LLP
                          IRA G. RIVIN
24                              ROGER F. FRIEDMAN

25                             By: /s/ Roger F. Friedman

26                                Roger F. Friedman
                            Attorneys for Creditor
27                                First Bank Financial Centre,
                            a Wisconsin Banking corporation

28

**DECLARATION OF MICHAEL KENWORTHY**

I, Michael Kenworthy, declare as follows:

1.      I am a Vice-President of First Bank Financial Centre, a Wisconsin banking corporation. I submit this Declaration in support of FBFC's "Motion for Relief from the Automatic Stay" in this Bankruptcy Case filed by Gregory Sims. Except as indicated below, I make this declaration based on facts within my personal knowledge and, if called as a witness, I could and would testify competently thereto.

2.      I am personally familiar with FBFC's business. In the ordinary course of its business, FBFC regularly maintains and updates detailed books, records, and files, and files that pertain to loans and extensions of credit given to various borrowers (the "Books and Records"). As part of my duties at FBFC, I am one of the custodians of FBFC's Books and Records. I am familiar with FBFC's record-keeping procedures, and I have knowledge of the procedures governing the creation and maintenance of FBFC's Books and Records. I have personally worked on the Books and Records. The Books and Records are made by persons with knowledge of the relevant facts at or near the time of the transactions in question, and the Books and Records are maintained by FBFC in the ordinary course of business. I am generally familiar with FBFC's Books and Records, and I am specifically familiar with FBFC's Books and Records that pertain to the Loan described below. Unless a different source of information is specified below, all of the figures contained in this declaration were obtained from FBFC's Books and Records, or represent summaries of FBFC's Books and Records. FBFC's Books and Records are available for inspection by the Court, and copies can be submitted to the Court if required.

3.      On or about April 21, 2016, FBFC loaned LTB Investments Inc. and BE Commercial Real Estate Inc. ("jointly, the Borrowers") the sum of $3,090,000 (the "Loan"). The Borrowers' obligation is to repay the Loan is evidenced by a variable rate Note executed by the Borrowers (the "Note") and is secured by a Deed of Trust executed by Borrowers as Grantor dated April 21, 2016 (the "Deed of Trust") conveying a security interest in the Property. True and correct copies of the Note and Deed of Trust are

1 attached to these moving papers as Exhibits "A" and "B," respectively. The Note required

2 the Borrowers to make initial monthly installment payments in the amount of $19,439.39

3 to FBFC. Monthly payments were to continue until the loan matured in 25 years, at which

4 time all remaining principal and interest came due.

5      4.     Following the Borrowers' default on their obligations under the Note in

6 approximately June 2018, FBFC, the Borrowers and the Guarantors entered into a Loan

7 Deferral and Modification Agreement (SBA Loan) dated July 19, 2018 (the "Loan

8 Modification Agreement"), a true and correct copy of which is attached hereto as

9 Exhibit C. The Borrowers thereafter again defaulted on their obligations under the Note,

10 as amended by the Loan Modification Agreement, by failing to make the installment

11 payments owing on August 25, 2018, and September 25, 2018, in the amount of

12 $21,755.88 each. No further payments on the Loan have been made.

13      5.     The following amounts were owed on the Loan as of February 26, 2019:

| | |
|---|---|
| Principal | $3,003,903.00 |
| Pre-petition advances for insurance & other expense | $71,240.83 |
| Pre-petition late fees | $11,674.25$ |
| Accrued but Unpaid Interest through 2/26/19 (Est.) | $133,077.19 |
| Foreclosure and Legal Fees | $31,225.42 |
| Total due | $3,251,120.69 |

22      I declare under penalty of perjury under the laws of the United States of America

23 that the foregoing is true and correct.

24      Executed on April 18, 2019, at Oconomowoc, Wisconsin.

Michael Kenworthy

## DECLARATION OF IRA G. RIVIN

I, Ira G. Rivin, declare as follows:

1.      I am an attorney and a partner at the law firm of Rutan & Tucker, LLP, and I represent First Bank Financial Centre, a Wisconsin Banking corporation ("FBFC"). I am a member in good standing of the State Bar of California. I submit this Declaration in support of FBFC's Notice of Motion and Motion for Relief from the Automatic Stay in this Chapter 13 bankruptcy case filed by Gregory Sims. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2.      My law firm and I were retained to represent FBFC in connection with a loan from FBFC to LTB Investments Inc. and BE Commercial Real Estate Inc. ("jointly, the Borrowers") that went into default. On behalf of FBFC, I was the principal person who worked with Chicago Title in connection with FBFC's foreclosure under the Deed of Trust executed by Borrowers (the "Deed of Trust") conveying a security interest in the property securing the Note, which is commonly known as 1161 Park View Drive, Covina, CA 91724 (the "Property").

3.      On October 18, 2018, FBFC caused Chicago Title Company (as substituted trustee under the Deed of Trust) to record a Notice of Default and Election to Sell Under Deed of Trust (the "Notice of Default"). FBFC thereafter caused to be recorded a Notice of Trustee's Sale (the "Notice of Sale"), scheduling the foreclosure sale of the Property for February 27, 2019. (*Id.*). True and correct copies of the Substitution of Trustees and the Notice of Default are attached to these moving papers as Exhibit "D." The Notice of Sale is attached hereto as Exhibit "E." FBFC twice postponed the sale, for two weeks each time, and the sale was scheduled to proceed on March 27, 2019.

4.      On March 26, 2019, Chicago Title Company, acting as trustee under the Deed of Trust, sent me notification that the foreclosure sale of the Property was being postponed due to an apparent transfer of an interest in the Property to the Debtor and a bankruptcy filing by the Debtor. The notification I received from Chicago Title contained

Rutan & Tucker, LLP
*attorneys at law*

106/034504-0002
13612737.1 a04/19/19

1   a Grant Deed, recorded on February 26, 2019 – the day before the originally scheduled

2   foreclosure sale – reflecting the transfer of a two percent interest in the Property from one

3   of the Borrowers to the Debtor.  A true and correct copy of that notification, including the

4   Grant Deed, is attached hereto as Exhibit "F."

5        5.     On behalf of FBFC, I instructed Chicago Title to continue the foreclosure

6   sale after learning of the bankruptcy filing.  The sale will be continued from time to time as

7   needed pending the entry of an order for relief from the automatic stay or another order

8   from the Court that permits the sale to proceed.

9        Executed on April 19, 2019, at Costa Mesa, California.

10        I declare under penalty of perjury under the laws of the State of California that the

11   foregoing is true and correct.

12

13   _____

14                  Ira G. Rivin

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

CERTIFIED TO BE A TRUE CORRECT AND
COMPLETE COPY OF THE ORIGINAL

FIRST AMERICAN TITLE INSURANCE COMPANY
NATIONAL COMMERCIAL SERVICES



U.S. Small Business Administration

# NOTE

| SBA Loan # | 81768850-08 |
|---|---|
| SBA Loan Name | BE Commercial Real Estate Inc |
| Date | |
| Loan Amount | $3,090,000.00 |
| Interest Rate | Wall Street Journal Prime Rate plus 2.25% |
| Borrower | BE COMMERCIAL REAL ESTATE INC and LTB INVESTMENTS |
| Operating Company | N/A |
| Lender | First Bank Financial Centre |

1.  **PROMISE TO PAY:**

    In return for the Loan, Borrower promises to pay to the order of Lender the amount of Three Million Ninety Thousand
    Dollars,  interest on the unpaid principal balance, and all other amounts required by this Note.

2.  **DEFINITIONS:**

    "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

    "Guarantor" means each person or  entity that signs a guarantee of payment of this Note.

    "Loan" means the loan evidenced by this Note.

    "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges
    collateral.

    "SBA." means the Small Business Administration, an Agency of the United States of America.

CERTIFIED TO BE A TRUE CORRECT AND
COMPLETE COPY OF THE ORIGINAL

FIRST AMERICAN TITLE INSURANCE COMPANY
NATIONAL COMMERCIAL SERVICES

*Lori A. Allison*

3.  PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

· The interest rate on this Note will fluctuate. The initial interest rate is 5.75% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.25%. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must pay principal and interest payments of $19,439.39 every month, beginning one month from the month this Note is dated; payments must be made on the same day as the date of this Note in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

· Lender and Borrower may agree to pay an additional amount into an escrow account for payment of real estate taxes and required insurance related to commercial real estate securing the loan. Any such account must comply with SOP 50 10.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month (as published in the WSJ newspaper) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.25% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

Borrower may Prepay this Note. Borrower may prepay 20% or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:

a.    Give Lender written notice;
b.    Pay all accrued interest; and
c.    If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

· Subsidy Recoupment Fee. When in any one of the first three years from the date of initial disbursement Borrower voluntarily prepays more than 25% of the outstanding principal balance of the loan, Borrower must pay to Lender on behalf of SBA a prepayment fee for that year as follows:

CERTIFIED TO BE A TRUE CORRECT AND
COMPLETE COPY OF THE ORIGINAL

FIRST AMERICAN TITLE INSURANCE COMPANY
NATIONAL COMMERCIAL SERVICES

a.   During the first year after the date on which the loan is first disbursed, 5% of the total prepayment amount;
b.   During the second year after the date on which the loan is first disbursed, 3% of the total prepayment amount; and,
c.   During the third year after the date on which the loan is first disbursed, 1% of the total prepayment amount.

All remaining principal and accrued interest is due and payable 25 years from date of Note.

**Late Charge:** If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.   DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.   Fails to do anything required by this Note and other Loan Documents;
B.   Defaults on any other loan with Lender;
C.   Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
D.   Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;
E.   Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
F.   Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;
G.   Fails to pay any taxes when due;
H.   Becomes the subject of a proceeding under any bankruptcy or insolvency law;
I.   Has a receiver or liquidator appointed for any part of their business or property;
J.   Makes an assignment for the benefit of creditors;
K.   Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
L.   Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
M.   Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.   LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.   Require immediate payment of all amounts owing under this Note;
B.   Collect all amounts owing from any Borrower or Guarantor;
C.   File suit and obtain judgment;
D.   Take possession of any Collateral; or
E.   Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.   LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.   Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;
B.   Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property

CERTIFIED TO BE A TRUE, CORRECT AND
COMPLETE COPY OF THE ORIGINAL

FIRST AMERICAN TITLE INSURANCE COMPANY
NATIONAL COMMERCIAL SERVICES

taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.    Release anyone obligated to pay this Note;

D.    Compromise, release, renew, extend or substitute any of the Collateral; and

E.    Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.    WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.    SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9.    GENERAL PROVISIONS:

A.    All individuals and entities signing this Note are jointly and severally liable.

B.    Borrower waives all suretyship defenses.

C.    Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.    Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.    Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.    If any part of this Note is unenforceable, all other parts remain in effect.

G.    To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

CERTIFIED TO BE A TRUE CORRECT AND
COMPLETE COPY OF THE ORIGINAL

FIRST AMERICAN TITLE INSURANCE COMPANY
NATIONAL COMMERCIAL SERVICES

Lori A. Allison

10.    STATE-SPECIFIC PROVISIONS:

BORROWER HEREBY EXPRESSLY (A) WAIVES ANY RIGHTS IT MAY HAVE UNDER CALIFORNIA
CIVIL CODE SECTION 2954.10 TO PREPAY THIS NOTE, IN WHOLE OR IN PART, WITHOUT
PENALTY, UPON ACCELERATION OF THE MATURITY OF THIS NOTE, AND (B) AGREES THAT IF A
PREPAYMENT OF ANY OR ALL OF THIS NOTE IS MADE, FOLLOWING ANY ACCELERATION OF
THE MATURITY OF THIS NOTE BY THE HOLDER HEREOF ON ACCOUNT OF ANY TRANSFER OR
DISPOSITION AS PROHIBITED OR RESTRICTED BY THE DEED OF TRUST, THEN BORROWER
SHALL BE OBLIGATED TO PAY, CONCURRENTLY THEREWITH, AS A PREPAYMENT FEE, THE
APPLICABLE SUM SPECIFIED IN PARAGRAPH 5, ABOVE. BY INITIALING THIS PROVISION IN THE
SPACE PROVIDED BELOW, THE UNDERSIGNED HEREBY DECLARES THAT LENDER'S AGREEMENT
TO MAKE THE SUBJECT LOAN AT THE INTEREST RATE AND FOR THE TERM SET FORTH IN THIS
NOTE CONSTITUTES ADEQUATE CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY THE
UNDERSIGNED, FOR THIS WAIVER AND AGREEMENT.

BORROWER'S INITIALS:

Borrower acknowledges this Note is secured by a Deed of Trust in favor of Lender on real property located in Los
Angeles County, State of California. That Deed of Trust contains the following due-on-sale provision:

Due On Sale. Without the prior written consent of Lender, Grantor will abstain from and will not cause or permit
any sale, exchange, transfer, lease or conveyance (herein all called " transfer" ) of all or any part of the Property,
or any interest in it, voluntarily or by operation of law. If all or any part of the Property or an interest therein is
sold or transferred without Lender' s prior written consent, Lender may, at Lender' s option, declare all the sums
secured by this Deed of Trust to be immediately due and payable.

Exhibit A, Page 26

CERTIFIED TO BE A TRUE CORRECT AND
COMPLETE COPY OF THE ORIGINAL

FIRST AMERICAN TITLE INSURANCE COMPANY
NATIONAL COMMERCIAL SERVICES

11.     BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BE COMMERCIAL REAL ESTATE INC

By: _____
    L.T.  Butler, President/Secretary

LTB INVESTMENTS

By: _____
    L.T.  Butler, President/Secretary

## EXHIBIT B

 

This page is part of your document - DO NOT DISCARD

 **20160483759**



Pages:
0023

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/28/16 AT 08:00AM**

| | |
|---|---|
| FEES: | 124.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 124.00 |





LEADSHEET



201604280280005

00012020528


007521063

SEQ:
07

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

T89



Exhibit B, Page 28

Recording Requested By
First American Title Company
National Commercial Services



04/28/2016

*20160483759*

Prepared by and return to:
Jessica L. Conn, Esquire
Starfield & Smith, P.C.
1300 Virginia Drive, Suite 325
Fort Washington, PA 19034

APN: 8448-019-039 and 8448-019-050
NCS-756369-ONT1

### DEED OF TRUST

NOTICE: THIS DOCUMENT SECURES A VARIABLE INTEREST RATE NOTE AND
CONTAINS PROVISIONS FOR INCREASES UNDER CERTAIN CIRCUMSTANCES IN THE
PRINCIPAL BALANCE OF THE INDEBTEDNESS SECURED HEREBY

THIS IS A PURCHASE MONEY 1ST DEED OF TRUST.

THIS DEED OF TRUST is made as of the 21st Day of April 2016 by and between BE
COMMERCIAL REAL ESTATE INC and LTB INVESTMENTS, with an address of 1161 Park View
Drive, Covina, CA 91724 ("Grantor"), and Ethan W. Smith, with an address of 1300 Virginia Drive, Suite
325, Fort Washington, PA 19034 ("Trustee").

### RECITALS

First Bank Financial Centre, having a place of business at 155 W. Wisconsin Ave., Oconomowoc, WI
53066 ("Lender"), has agreed, pursuant to a Loan Agreement of even date herewith (the "Loan
Agreement"), and subject to the terms set forth therein, to make a loan to Grantor in an aggregate amount
of Three Million Ninety Thousand Dollars and No Cents ($3,090,000.00) (the "Loan"), the Loan
Agreement constituting the consideration for this Deed of Trust.

Grantor has duly executed its promissory note of even date herewith (the "Note") to evidence the
terms of repayment of the Loan with interest at the rate or rates established from time to time in accordance
with the terms set forth therein, which Note has been delivered by Grantor to the Lender (the Lender and
any assignee or other lawful owner of the Note being hereinafter sometimes called "Holder").

[01431001;v1 ]                                    1                                    7 b

The entire unpaid balance of principal and interest, if not sooner paid, shall be due and payable Twenty-Five (25) years from the date hereof.

All things necessary to make the Note the valid, binding and legal obligation of Grantor, and to make this Deed of Trust a valid, binding and legal instrument for the security of the Note in accordance with its terms, have been duly performed, and the execution and delivery of the Note and this Deed of Trust by Grantor have been in all respects duly authorized.

It has been agreed that the repayment of the Loan with interest, according to the terms of the Note and any alterations, modifications, substitutions, extensions or renewals thereof, as well as the performance of the other covenants, terms and conditions herein, should be secured by the execution of this Deed of Trust, which also shall secure payment by Grantor of all costs and expenses incurred in respect to the Loan, including reasonable attorney's fees as is hereinafter provided.

NOW, THEREFORE, WITNESSETH: in consideration of the premises and of other good and valuable considerations, the receipt of which is hereby acknowledged, Grantor grants, assigns, conveys and transfers unto the Trustee, their and each of their successor or successors in the trust and assigns, in fee simple, all that land situate in the **City of Covina, County of Los Angeles, State of California, commonly known as 1161 Park View Drive, APN: 8448-019-039 and 8448-019-050,** and more particularly described in Exhibit A attached hereto and made a part hereof (the **"Land"**) and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repair, replacements and improvements now or hereafter located thereon (hereinafter sometimes called the **"Improvements"**).

TOGETHER with all the walks, fences, shrubbery, driveways, fixtures, equipment, machinery, apparatus, fittings, building materials and other articles of personal property of every kind and nature whatsoever, now or hereafter ordered for eventual delivery to the Land (whether or not delivered thereto), and all such as are now or hereafter located in or upon any interest or estate in the Land or any part thereof and used or usable in connection with any present or future operation of the Land now owned or hereafter acquired by Grantor, including, without limiting the generality of the foregoing, all heating, lighting, laundry, clothes washing, clothes drying, incinerating and power equipment, engines, pipes, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire-prevention, fire-extinguishing, refrigerating, ventilating, and communications apparatus, television sets, radio systems, recording systems, computer equipment, air-cooling and air-conditioning apparatus, elevators, escalators, shades, awnings, draperies, curtains, fans, furniture, furnishings, carpeting, linoleum and other floor coverings, screens, storm doors and windows, stoves, gas and electric ranges, refrigerators, garbage disposals, sump pumps, dishwashers, washers, dryers, attached cabinets, partitions, ducts and compressors, landscaping, swimming pools, lawn and garden equipment, security systems and including all equipment installed or to be installed or used or usable in the operation of the building or buildings or appurtenant facilities erected or to be erected in or upon the Land; it being understood that all of the aforesaid shall be deemed to be fixtures and part of the Land, but whether or not of the nature of fixtures they shall be deemed and shall constitute part of the security for the Obligations herein mentioned and shall be covered by this Deed of Trust. Disposition of any of the aforesaid or of any interest therein is prohibited; however, if any disposition is made in violation hereof, the Trustee shall have a security interest in the proceeds therefrom to the fullest extent permitted by the laws of the State of California; and

TOGETHER with all and singular the rights, alleys, ways, waters, easements, tenements, privileges, advantages, accessions, hereditaments and appurtenances belonging or in any way appertaining to the Land and other property described herein, and the reversions and remainders, earnings, revenues, rents, issues and profits thereof and including any right, title, interest or estate hereafter acquired by Grantor in the Land and other property described herein; and

TOGETHER with all the right, title and interest (but not the obligations) of Grantor, present and future, in and to all present and future accounts, contract rights (including all fees and other obligations set forth in the Lender's commitment to make the Loan), general intangibles, chattel paper, documents and instruments including but not limited to licenses, construction contracts, service contracts, utility contracts,

{01431001;v1 }                                           2

4

options, permits, public works agreements, bonds, deposits and payments thereunder, relating or appertaining to the Land and other property described herein and its development, occupancy and use; and

TOGETHER with any right to payment for services rendered, whether or not yet earned by performance, arising from the operation of the improvements or any other facility on the Land, including, without limitation, (1) all accounts arising from the operation of the improvements and all proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof, and (2) all rights to payment from any consumer credit/charge card organization or entity, including, without limitation, payments arising from the use of the American Express Card, Visa Card, Carte Blanche Card, MasterCard, Diner's Club, or any other credit card, including those now existing or hereinafter created or any substitution therefor and all proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof; and

TOGETHER with all of the rents, royalties, revenues, income, proceeds, profits and other benefits paid or payable by parties to the leases for using, leasing, licensing, possessing, occupying, operating from, residing in, selling or otherwise enjoying the Land, the improvements, and other property securing the Obligations, or any portion thereof. As used in this Deed of Trust, the word "leases" includes any and all leases, subleases, licenses, concessions, reservations, accounts, permits, contracts, and other agreements (oral or written, now or hereafter in effect) which grant a possessory interest or right of occupancy in and to, or the right to use, or affect all or part of the Land, the improvements, and other property securing the Obligations, or any portion thereof; and

TOGETHER with all proceeds of and any unearned premiums on any insurance policies covering the Property (hereinafter defined), including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property or any part thereof; and

TOGETHER with all proceeds derived from any taking by condemnation or eminent domain proceedings or transfer in place or in anticipation thereof of all or any part of the property described in these granting clauses;

TO HAVE AND TO HOLD the Land with improvements thereupon and all the rights, easements, profits and appurtenances and other property described above (all of which is hereinafter sometimes called the "Property") belonging unto and to the use of the Trustee, and their and each of their successor or successors in the trust and assigns, in fee simple forever;

BUT IN TRUST, NEVERTHELESS, for and upon the uses, intents and purposes hereinafter mentioned, that is to say for the benefit and security of Holder and for the enforcement of the payment of the Loan, the Note and all other loans, advances, debts, liabilities, obligations, covenants and duties owing by the Borrower and/or Grantor to the Lender (and its successors and/or assigns) of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Borrower or Grantor, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, express or implied, under any documents evidencing or executed in connection with any of the foregoing; and any amendments, extensions, substitutions, renewals, replacements and/or increases of or to any of the foregoing, and all costs and expenses of the Lender incurred in the documentation, negotiation, modification, enforcement, collection and otherwise in connection with any of the foregoing, including reasonable attorneys' fees and expenses (hereinafter referred to collectively as the "Obligations"). Unless expressly provided to the contrary in documentation for any other loan or loans, it is the express intent of the Lender, the Borrower and the Grantor that all Obligations, including those included in, arising out of or *related to the Loan*, be cross-collateralized and cross-defaulted, such that collateral securing any of the Obligations shall secure repayment of all Obligations and a default under any Obligation shall be a default under all Obligations;

SUBJECT, HOWEVER, to the superior liens and rights of the holders of the contracts and instruments secured by any instruments that may be described in Exhibit B to this Deed of Trust (the "**Permitted Encumbrances**");

PROVIDED, HOWEVER, that if Grantor shall pay or cause to be paid to Holder all sums secured hereby in the manner stipulated in the Note, the Loan Agreement and this Deed of Trust, then and in such case, the estate, right, title and interest of the Trustee in the Property shall cease, determine and become void, and upon proof being given to the satisfaction of the Trustee that the Note has been paid or satisfied, in accordance with its terms and upon payment of all fees, costs, charges, expenses and liabilities chargeable or incurred or to be incurred by the Trustee and of any other sums as in this Deed of Trust provided, the Trustee shall, upon receipt of the written request of Holder, and at the expense of Grantor, release and discharge this Deed of Trust of record, and shall transfer and deliver up to Grantor any property at the time subject to this Deed of Trust which may be then in their possession, provided the Trustee hereunder shall be entitled to a fee of Twenty Dollars ($20.00) each for the release and reconveyance of the Property or any partial release and reconveyance;

AND THIS DEED OF TRUST FURTHER WITNESSETH, that Grantor (jointly and severally if more than one) has covenanted and agreed and does hereby covenant and agree with the Trustee and with Holder as follows:

## ARTICLE I. DEFINITIONS

1.1    **Definitions.** All capitalized terms used herein and not otherwise defined shall have the respective meanings set forth or referred to in the Loan Agreement.

## ARTICLE II. COVENANTS AND AGREEMENTS OF GRANTOR

2.1    **Incorporation of Covenants, Conditions and Agreements.** All the covenants, conditions and agreements contained in the Loan Agreement, the Note and the other Loan Documents are hereby made a part of this Deed of Trust to the same extent and with the same force as if fully set forth herein.

2.2    **Title to the Property.** Grantor covenants that at the time of the execution and delivery of this Deed of Trust it has good title to all of the property described in the granting clauses of this Deed of Trust as being presently granted, assigned, conveyed and transferred hereunder, free and clear of all liens and encumbrances except for the Permitted Encumbrances; Grantor hereby does and will forever warrant generally and defend the title to the Property, and every part thereof, whether now owned or hereafter acquired, unto the Trustee and their or each of their successor or successors in the trust and assigns, against all claims and demands by any person or entity whatsoever; Grantor covenants that Grantor shall comply with all the terms, covenants and conditions of all agreements and instruments, recorded and unrecorded, affecting the Property; Grantor covenants that it has good right and lawful authority to mortgage, give, grant, pledge, assign and convey the Property in the manner and form herein provided.

2.3    **Further Assurances.** At any and all times Grantor shall furnish and record all and every such further assurances as may be requisite or as the Trustee shall reasonably require for the better assuring and confirming unto the Trustee the estate and property hereby granted, assigned, conveyed or transferred, or intended so to be whether now owned or hereafter acquired; Grantor shall bear all expenses, charges and taxes in connection therewith.

2.4    **Escrow for Taxes.** To better secure the covenant to pay taxes and fees in the Loan Agreement, Grantor agrees that, if Holder so requests, Grantor shall deposit with Holder on the day of each month on which a payment of interest is due under the Note, beginning with the month following such request, one-twelfth of the annual taxes next due as estimated by Holder, plus one-twelfth of the annual fire, hazard and other insurance premiums as required herein, such deposit to be held by Holder, without

{01431001;v1 }                                4

interest, to pay said taxes and premiums. If payments of interest are due under the Note other than monthly, appropriate adjustment shall be made in the amount of the aforesaid periodic deposits.

Any amounts deposited pursuant to the provisions of this Section shall not be, nor be deemed to be, trust funds, nor shall they operate to curtail or reduce the Obligations secured hereby, and all such amounts may be commingled with the general funds of the depositor and be deposited with Holder or at an institution designated by Holder. Holder shall not be responsible for the solvency of such institution, provided it is insured by the Federal Deposit Insurance Corporation or other regulatory agency at the time of designation. If at any time Holder shall determine that the amount then on deposit shall be insufficient to pay an obligation in full, Grantor shall immediately after demand deposit with Holder the amount of the deficiency determined by Holder. Nothing contained in this Section shall be deemed to affect any right or remedy of Holder under any provisions of this Deed of Trust or of any statute or rule of law to pay any such amount and to add the amount so paid, together with interest at the rate provided for in the Note, to the Obligations secured hereby.

2.5    **Change in Tax Law.** In the event of the passage after date of this Deed of Trust of any law changing in any way the laws for the taxation of deeds of trust or debts secured by deeds of trust, or the manner of collection of any such taxation so as to affect this Deed of Trust, Holder may give thirty (30) days' written notice to Grantor requiring the payment of the Obligations secured hereby. If such notice be given, the Obligations secured hereby shall become due and payable at the expiration of said thirty (30) days; *provided, however,* that such requirement of payment shall be ineffective if Grantor is permitted by law to pay the whole of such tax in addition to *all* other payments required hereunder, without any penalty or charge thereby accruing to Holder, and if Grantor in fact pays such tax prior to the date upon which payment is required by such notice.

2.6    **Activities on the Property.** Grantor shall not suffer any act to be done or any conditions to exist on the Property or any part thereof or any thing or article to be brought thereon (i) which may cause structural injury to the improvements on the Land; or (ii) which would cause the value or usefulness of the Property or any part thereof to diminish (ordinary wear and tear excepted); or (iii) which may be dangerous, unless safeguarded as required by law; or (iv) which may in fact or in law, constitute a nuisance, public or private; or (v) which may void or make voidable any insurance then in force or required by the terms of this Deed of Trust, the Loan Agreement to be in force.

2.7    **Additional Insurance.** In addition to the provisions of and to the extent not so provided by the Loan Agreement, Grantor shall at all times maintain during the entire term of this Deed of Trust the following insurance, in form and substance satisfactory to Holder.

(a) Commercial General Liability. Grantor shall at all times keep itself insured against liability for damages arising from any accident or casualty in or upon the Property by maintaining commercial general liability insurance in an amount acceptable to Holder and under forms and by companies approved by Holder.

(b) Business Interruption Insurance. Grantor shall at all times maintain in full force and effect business interruption insurance in an amount acceptable to Holder and under forms and by companies approved by Holder.

(c) Workers' Compensation. During any construction, repair, restoration or replacement of improvements on the Land, Grantor shall cause all contractors and subcontractors (including Grantor if it acts as a contractor) to obtain and keep in effect workers' compensation insurance to the full extent required by applicable law and also which shall cover all employees of each contractor and subcontractor; upon demand, Grantor shall provide evidence satisfactory to Holder that it is complying with this covenant. All insurance for loss or damage shall provide that losses, if any, shall be payable to Holder, as its interest may appear. Grantor will pay the premiums for all insurance and deliver to Holder the policies of insurance or duplicates thereof, or other evidence satisfactory to Holder of such insurance coverage. Each insurer shall agree, by endorsement upon the policy or policies issued by it, or by independent instrument furnished to Holder, that (i) it will give Holder thirty (30) days' prior written notice of the effective date of any material

alteration or cancellation of such policy; and (ii) the coverage of Holder shall not be terminated, reduced or affected in any manner regardless of any breach or violation by Grantor of any warranties, declarations or conditions of such insurance policy or policies. The proceeds of such insurance shall be applied, at Holder's option, toward the replacement, restoration or repair of the Property which may be lost, stolen or destroyed or damaged or toward payment of any Obligations of Grantor to Holder.

      2.8    **Additional Advances.** If Grantor shall fail to perform any of the covenants or satisfy any of the conditions contained herein, Holder may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid shall be at once repayable by Grantor and shall bear interest at the Default Rate from the date the same shall become due and payable until the date paid, and all sums so advanced or paid, with interest as aforesaid, shall become a part of the Obligations secured hereby; but no such advance or payment shall relieve Grantor from any default hereunder. If Grantor shall fail to perform any of the covenants or satisfy any of the conditions contained herein, Holder may use any funds of Grantor towards performance or satisfaction of the same but shall be under no obligation so to do; and no such use of funds shall relieve Grantor from any default hereunder.

      2.9    **Condemnation Awards.** Should the grade of any street be altered or all or any part of the Property be condemned or taken through eminent domain proceedings, all or such part of any award or proceeds derived therefrom, as Holder in its sole discretion may determine in writing, shall be paid to Holder and applied to the payment of the Obligations secured hereby (in such manner or combination thereof, including inverse order of maturity of installments of principal, if any, as Holder may, in its sole discretion, elect) and all such proceeds are hereby assigned to Holder.

      2.10    **Costs of Defending and Enforcing the Lien.** Grantor shall pay all costs, charges and expenses, including appraisals, title examinations, and reasonable attorney's fees, which Holder or the Trustee may incur in defending or enforcing the validity or priority of this Deed of Trust, or any term, covenant or condition hereof, or in collecting any sum secured hereby, or in protecting the security of Holder including without limitation being a party in any condemnation, bankruptcy or administrative proceedings, or, if an Event of Default shall occur, in administering and executing the trust hereby created and performing their powers, privileges and duties hereunder. Holder or the Trustee may make advances or payments for such purposes but all advances or payments made by Holder or the Trustee for such purposes shall be repayable immediately by Grantor and shall bear interest at the Default Rate from the date the same shall become due and payable until the date paid, and any such sum or sums with interest as aforesaid shall become a part of the Obligations secured hereby; but no such advance or payment shall relieve Grantor from any default hereunder.

      2.11    **Modification of Terms; No Novation.** Holder may at any time, and from time to time, extend the time for payment of the Obligations secured hereby, or any part thereof, or interest thereon, and waive, modify or amend any of the terms, covenants or conditions in the Note, in this Deed of Trust or in any other Loan Document, in whole or in part, either at the request of Grantor or of any person having an interest in the Property, accept one or more notes in replacement or substitution of the Note, consent to the release of all or any part of the Property from the legal operation and effect of this Deed of Trust (and the Trustee may so release), take or release other security, release any party primarily or secondarily liable on the Note or hereunder or on such other security, grant extensions, renewals or indulgences therein or herein, apply to the payment of the principal and interest and premium, if any, of the Obligations secured hereby any part or all of the proceeds obtained by sale or otherwise as provided herein, without resort or regard to other security, or resort to any one or more of the securities or remedies which Holder may have and which in its absolute discretion it may pursue for the payment of all or any part of the Obligations secured hereby, in such order and in such manner as it may determine, all without in any way releasing Grantor or any party secondarily liable from any of the terms, covenants or conditions of the Note, this Deed of Trust, or any other Loan Document, or relieving the unreleased Property from the legal operation and effect of this Deed of Trust for all amounts owing under the Note, the Loan Agreement and this Deed of Trust. Holder and Grantor recognize and agree that the provisions of this Deed of Trust, the Note, and any other Loan Document may be modified by them or their successors or assigns at any time before or after default (which modification may involve increasing the rate of interest in the Note, agreeing that other charges

Exhibit B, Page 34

should be paid, or modifying any other provision in any such instruments). The Trustee acting pursuant to the written direction of Holder may extend the time of payment, may agree to alter the terms of payment of the Obligations, and may grant partial releases of any portion of the property included herein. No such modification by Holder and Grantor nor any such action by Holder or the Trustee referred to above shall be a substitution or novation of the original Obligations or instruments evidencing or securing the same, but shall be considered a possible occurrence within the original contemplation of the parties.

2.12    **Governmental Action Affecting the Property.** Grantor agrees that in the event of the enactment of any law or ordinance, the promulgation of any zoning or other governmental regulation, or the rendition of any judicial decree restricting or affecting the use of the Property or rezoning the area wherein the same shall be situate which Holder reasonably believes adversely affects the Property, Holder may, upon at least sixty (60) days' written notice to Grantor, require payment of the Obligations secured hereby at such time as may be stipulated in such notice, and the whole of the Obligations secured hereby, shall thereupon become due and payable.

### ARTICLE III. EVENTS OF DEFAULT

The occurrence of one or more of the following events (herein called an "Event of Default") shall constitute and be an Event of Default:

3.1    **Default under Loan Documents.** The occurrence and continuance of an Event of Default under the Loan Agreement, the Note, or any other Loan Document shall constitute an Event of Default hereunder. In the event Holder consents to an encumbrance on the Property, a default under the terms of any document creating such an encumbrance shall be a default hereunder.

3.2    **Additional Insurance Obligations.** Grantor fails to promptly perform or comply with any of the terms and conditions set forth in subsection 2.7 and such failure continues for ten (10) days after notice from Holder to Grantor.

3.3    **Material Obligations.** Grantor fails to perform or observe any of its material obligations under this Deed of Trust and such failure shall continue for a period of thirty (30) days after Holder gives Grantor written notice thereof.

3.4    **Judgment.** Unless adequately covered by insurance in the reasonable opinion of Holder, the entry of a final judgment for the payment of money involving more than $10,000.00 against Grantor or any guarantor of the Loan and the failure of Grantor or any guarantor of the Loan to cause the same to be discharged or bonded off to the satisfaction of Holder within sixty (60) days from the date the order, decree or process under which or pursuant to which such judgment was entered.

### ARTICLE IV. REMEDIES

4.1    **Power of Sale; Assent to Decree.** If one or more of the Events of Default shall occur, the Trustee are authorized and shall have the power and the duty at the direction of Holder to proceed by suit or suits at law or in equity or by any other appropriate remedy to protect and enforce the rights of Holder whether for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or to enforce payment of the Note , or to foreclose this Deed of Trust, or to sell the Property under the judgment or decree of a court or courts of competent jurisdiction, or otherwise. Grantor, in accordance with any general or local laws or rules or regulations of the State of California relating to mortgages and deeds of trust including any amendments thereof or supplements thereto which do not materially change or impair the remedy, does hereby declare and assent to the passage of a decree to sell the Property by the equity court having jurisdiction for the sale of the Property and the Trustee appointed by such decree of court shall have, subject to the terms of the decree of court, the same authority and power to sell on the terms and conditions herein set forth, and for such purposes the word "Trustee" shall be deemed to include the Trustee so appointed. This assent to decree shall not be exhausted in the event the proceeding is dismissed before the indebtedness or Obligations secured hereby are paid in full.

Exhibit B, Page 35

4.2    **Acceleration.** If one or more of the Events of Default shall occur, Holder may, at its option, declare the entire unpaid principal amount of the Note (if not already due and payable) to be due and payable immediately, and upon any such declaration the same shall become and be immediately due and payable, anything in the Note, in the Loan Agreement or in this Deed of Trust to the contrary notwithstanding; and in the event of any sale of all or any part of the Property, whether made under the power of sale herein granted, assent to a decree or through judicial proceedings, such unpaid principal amount shall automatically and without notice become so due and payable. If Holder exercises Holder's option to declare the entire unpaid principal amount of the Note to be due and payable, Grantor covenants to pay immediately the full amount of the Obligations secured hereby even though foreclosure or other court proceedings to collect the Obligations have not been commenced. Acceleration of maturity, once declared by Holder, may at the option of Holder, be rescinded by written acknowledgment to that effect by Holder, but the tender and acceptance of partial payments alone shall not rescind or affect in any way such acceleration of maturity.

4.3    **Possession of the Property.** If one or more of the Events of Default shall occur, Grantor shall, upon demand, forthwith surrender the actual possession, and, to the extent permitted by law, Holder, by such officers or agents as it may appoint, may enter and take possession of the Property and may exclude Grantor, its agents and servants, wholly therefrom, and having and holding the same, may use, operate, manage and control the Property or any part thereof, and upon every such entry Holder, at the expense of Grantor and of the Property, from time to time may make all necessary or proper repairs, renewals, replacements and useful or required alterations, additions, betterments and improvements to and upon the Property as to it may seem judicious and pay all costs and expenses of so taking, holding and managing the same, including reasonable compensation to its employees and other agents (including, without limitation, attorney's fees and management and rental commissions) and any taxes, assessments and other charges prior to the legal operation and effect of this Deed of Trust which Holder may deem it wise or desirable to pay, and in such case Holder shall have the right to manage the Property and to carry on the business and exercise all rights and powers of Grantor, either in the name of Grantor, or otherwise, as Holder shall deem advisable; and Holder shall be entitled to collect and receive all rents thereof and therefrom. The taking of possession and collection of rents by Holder shall not be construed to be an affirmation of any lease or acceptance of attornment with respect to any lease of all or any portion of the Property. After deducting the expenses of operating the Property and of conducting the business thereof, and of all repairs, maintenance, renewals, replacements, alterations, additions, betterments, improvements and all payments which it may be required or may elect to make for taxes or other proper charges on the Property, or any part thereof, as well as just and reasonable compensation for all its employees and other agents (including, without limitation, attorney's fees and management and rental commissions) engaged and employed, the moneys arising as aforesaid shall be applied to the Obligations secured hereby. Whenever all that is due upon the principal of and interest on the Note and under any of the terms of this Deed of Trust shall have been paid and all defaults made good, Holder shall surrender possession to Grantor. The same right of entry, however, shall exist if any subsequent Event of Default shall occur.

4.4    **Appointment of a Receiver.** Until one or more of the Events of Default shall occur (but not thereafter), Grantor shall have possession of the Property and shall have the right to use and enjoy the same and to receive the rents thereof and therefrom. If one or more of the Events of Default shall occur, and without the requirement of any other showing, Holder shall be entitled as a matter of right and to the extent permitted by law, without notice to Grantor, and without regard to the adequacy of the security, to the immediate appointment of a receiver of the Property and of the rents thereof and therefrom, in an ex parte proceeding with all such other powers as the court or courts making such appointment shall confer, and the rents thereof and therefrom are hereby assigned to Holder as additional security under this Deed of Trust. Grantor shall deliver to the receiver appointed pursuant to the provisions of this Section, or to Holder in the event of entry pursuant to the terms of the preceding Section, all original records, books, bank accounts, leases, agreements, security deposits of the tenants and all other materials relating to the operation of the Property.

4.5    **Possession and Disposition of Personal Property.**

(a)       If one or more of the Events of Default shall occur, Holder may at its discretion require Grantor to assemble such items of the Property as may be designated by Holder and make them available to the Trustee at a place reasonably convenient to both parties to be designated by Holder or the Trustee. Upon a default under this Deed of Trust, Holder shall have the right to take possession of such items of the Property as Holder may elect. In taking possession Holder may proceed without judicial process if this can be done without breach of the peace. Holder shall have the further right to remove such items of the Property as it may choose to any location or locations selected by Holder, and Grantor shall pay the costs of such removal and for the storage and protection of such items immediately upon demand therefor.

(b)       If Holder elects to direct the Trustee to proceed under the California Uniform Commercial Code to dispose of some of the Property, the Trustee shall give Grantor notice by certified mail, postage prepaid, return receipt requested, of the time and place of any public sale of any of such property or of the time after which any private sale or other intended disposition thereof is to be made by sending notice to Grantor at least five (5) days before the time of the sale or other disposition, which provisions for notice Grantor and the Trustee agree are reasonable; provided, however, that nothing herein shall preclude Holder and the Trustee from proceeding as to all the Property in accordance with the rights and remedies of Holder and the Trustee in respect of the real property, as provided in the California Uniform Commercial Code, as amended from time to time.

4.6       Foreclosure Sale.

(a)       If one or more of the Events of Default shall occur, the Trustee, at the direction of Holder, shall sell and in the case of default of any purchaser or purchasers shall resell all the Property as an entirety, or in such parcels and in such order as Holder shall in writing request, or, in the absence of such request, as the Trustee may determine (Grantor hereby waiving for itself and for any person claiming by or through it application of the doctrine of marshalling of assets), at public auction at some convenient place or places in the jurisdiction in the  where the Property is situate, or in such other place or places as may be permitted by law, at such time, in such manner and upon such terms as the Trustee may fix and briefly specify in each notice of sale, which notice of sale shall state the time when, and the place where, the same is to be made, shall contain a brief general description of the property to be sold, and shall be sufficiently given if published as frequently and in such publication as may be required by law, and Holder or the Trustee may cause such further public advertisement to be made as they may deem advisable, and any such sale may be adjourned by the Trustee by announcement at the time and place appointed for such sale or for such adjourned sale, and, without further notice or publication, such sale may be made at the time and place to which the same shall be so adjourned. If one or more leases are entered into or recorded subsequent to the recording of this Deed of Trust or are otherwise subordinate to this Deed of Trust, the Trustee shall sell, at the direction of Holder, subject to any one or more of such tenancies that are designated and selected by Holder.

(b)       Upon the completion of any sale and compliance with all the terms thereof, the Trustee shall execute and deliver to the purchaser or purchasers a good and sufficient deed of conveyance, assignment and transfer, lawfully conveying, assigning and transferring the property sold. Payment to the Trustee of the entire purchase money shall be full and sufficient discharge of any purchaser or purchasers of the property, sold as aforesaid, for the purchase money; and no such purchaser, or his representatives, successors or assigns, after paying such purchase money and receiving the deed shall be bound to see to the application of such purchase money.

(c)       In the case of any sale of the Property or of any part thereof, whether under the power of sale herein granted, assent to decree or through other judicial proceedings, the purchase money, proceeds and avails thereof, together with any other sums which may then be held as security hereunder or be due under any of the provisions hereof as a part of the Property, shall be applied as follows:

{01431001;v1 }                                   9

FIRST, to pay all proper costs, charges, fees and expenses, including the fees and costs herein provided for and to pay the costs of appraisals of the Property and the costs of title examination; and to pay or repay to Holder or the Trustee all moneys advanced by them or either of them for taxes, insurance or otherwise, with interest thereon as provided herein; and to pay all taxes due upon the Property at the time of sale; and to pay any other lien or encumbrance prior to the legal operation and effect of this Deed of Trust unless said sale is made subject to any such taxes or other lien or encumbrance; and to pay a counsel fee of One thousand five hundred Dollars ($1,500.00) for conducting the proceedings if without contest, but if legal services are rendered to Trustee or to Holder in connection with any contested matter in the proceedings, then such additional counsel fees and expenses shall be allowed out of the proceeds of sale or sales as the court may deem proper; and to pay additional reasonable counsel fees, if any, incurred as a result of representing Holder's interest in any proceedings on behalf of any Grantor before any United States Bankruptcy Court or similar State insolvency proceedings; and also to pay a commission to the Trustee or other party making the sale equal to five percent (5%) of the gross sale price; and also to pay a commission to the auctioneer conducting the sale of three percent (3%) of the gross sale price;

SECOND, to pay whatever may then remain unpaid under the Note and the interest thereon to the date of payment, whether the same shall be due or not, it being agreed that the Note shall, upon such sale being made before the maturity of the Note, be and become immediately due and payable at the election of Holder and to pay all of the Obligations secured hereby;

THIRD, to pay the remainder of said proceeds, if any, less the expense, if any, of obtaining possession, to Grantor or other party lawfully entitled to receive the same, upon the delivery and surrender of possession of the Property sold and conveyed and delivery of all records, books, bank accounts, leases, agreements, security deposits of the tenants and all other material relating to the operation of the Property to the said purchaser or purchasers.

(d)    Immediately upon the filing or docketing of suit preliminary to a foreclosure sale of the Property, or any part thereof under this Deed of Trust, there shall be and become due and owing by Grantor, a Trustee' commission on the total amount of the indebtedness secured hereby equal to two and one-half percent (2- 1/2%), and an auctioneer's commission on the total amount of the indebtedness of one percent (1%), and Holder shall not be required to receive the principal and interest in satisfaction of the Obligations secured hereby, but said sale may be proceeded with unless, prior to the day appointed therefor, tender is made of said principal, interest, commissions and all expenses and costs incident to such sale and all other sums that are part of the Obligations secured hereby.

(e)    Holder may bid and become the purchaser at any sale under this Deed of Trust. If Holder is the purchaser at any such sale, Holder may apply the outstanding indebtedness against all or any portion of the purchase price, including the deposit.

## ARTICLE V, MISCELLANEOUS

### 5.1    Trustee.

(a)    *Actions of Trustee.* The Trustee shall be protected in acting upon any notice, request, consent, demand, statement, note or other paper or document believed by them to be genuine and to have been signed by the party or parties purporting to sign the same. The Trustee shall not be liable for any error of judgment, nor for any act done or step taken or omitted, nor for any mistake of law or fact, nor for anything which they may do or refrain from doing in good faith nor generally shall a Trustee have any accountability hereunder except for his own individual willful default.

Exhibit B, Page 38

*12*

(b)    *Trustee as Attorneys.* The Trustee may act hereunder and may sell and convey the Property as herein provided although the Trustee have been, may now be or may hereafter be, attorneys or agents of any Holder, in respect of any matter or business whatsoever.

(c)    *Substitution of Trustee.* Holder shall be entitled to remove, substitute, or add a Trustee or Trustee, at its option, with or without cause or notice, by instrument duly executed, acknowledged and recorded among the Land Records of the city or county in the  where this Deed of Trust is recorded, and thereupon such additional or successor Trustee or Trustee, without any further act, deed or conveyance, shall become vested with all the estates, property, title, rights, powers, privileges, discretions, trusts, duties and obligations of his or their co-Trustee, or predecessor or predecessors in the trust hereunder with like effect as if originally named as Trustee or Trustee hereunder; exercise of said power, no matter how often, shall not be an exhaustion thereof.

(d)    *Incapacity or Absence From State.* It is further understood and agreed that in the event of the disability of one of the Trustee, or of such Trustee's absence from the , the rights, powers, privileges, discretions, duties, obligations, and trust hereby created and reposed in the Trustee may be executed by the other Trustee or Trustee with the same legal force, effect and virtue as though executed by both or all of them.

5.2    **Estoppel Certificates.** Grantor, upon request, made either personally or by mail, shall, within six (6) days in case the request is made personally, or within ten (10) days after the mailing of such request in case the request is made by mail, certify, by a writing duly acknowledged, to Holder or to any proposed assignee of the Note, the amount of principal and interest then owing on the Note and whether any offsets or defenses exist against the Obligations secured hereby. At the request of Holder, such certificate shall also contain a statement that Grantor knows of no Event of Default nor of any other default which, after notice or lapse of time or both, would constitute an Event of Default, which has occurred and remains uncured as of the date of such certificate, or, if any such Event of Default or other default has occurred and remains uncured as of the date of such certificate, then such certificate shall contain a statement specifying the nature thereof, the time for which the same has continued and the action which Grantor has taken or proposes to take with respect thereto.

5.3    **Subrogation.** This Deed of Trust and the Trustee, as additional security, are hereby subrogated to the lien or liens and to the rights thereof of the owners and holders thereof of each and every mortgage, lien or other encumbrance on the Property, or any part thereof, or any claim or demand which is paid or satisfied, in whole or in part, out of the proceeds of the Obligations secured hereby and the respective liens of said mortgages, liens and other encumbrances and claims and demands shall pass to and be held by the Trustee as additional security for the Obligations to Holder to the same extent that they would have been preserved and would have been passed to and been held by Holder had they each been duly and regularly assigned, transferred, set over and delivered to Holder by separate deed of assignment, notwithstanding the fact the same may be or may have been satisfied and cancelled of record, it being the intention of the parties hereto that the same will be satisfied and cancelled of record at or about the time they are paid or satisfied out of the proceeds of the Loan.

5.4    **Notices.** Unless specifically provided otherwise in this Deed of Trust or by law, any notice required or permitted by or in connection with this Deed of Trust shall be in writing and shall be made by facsimile or by hand delivery, by overnight delivery service, or by certified mail, unrestricted delivery, return receipt requested, postage prepaid, addressed to Holder or Grantor at the appropriate address set forth below or to such other address as may be hereafter specified by written notice by Holder or Grantor. Notice shall be considered given as of the date of the facsimile or the hand delivery, one (1) calendar day after delivery to the overnight delivery service, or three (3) calendar days after the date of mailing, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish that notice was given as provided herein.

5.5    **Legal Construction.** This Deed of Trust shall be construed according to the laws of the State of California (excluding conflict of laws) and any court of competent jurisdiction of the State of

California shall have jurisdiction in any proceeding instituted to enforce this Deed of Trust and any objections to venue are hereby waived.

5.6    **Usury Limitations.** No provision of this Deed of Trust shall require the payment or permit the collection of interest or other sum in excess of the maximum permitted by applicable law, including a judicial determination. If any excess of interest or other sum in such respect is herein provided for, or shall be adjudicated to be so provided for herein, neither Grantor nor its successors or assigns shall be obligated to pay such interest or other sum in excess of the amount permitted by applicable law, including a judicial determination, and the right to demand the payment of any such excess shall be and hereby is waived. The provisions of this Section shall control all other provisions of this Deed of Trust.

5.7    **Recording.** Grantor covenants and agrees to promptly cause all documents required by Holder to be properly recorded or filed, including this Deed of Trust, and to pay all fees, taxes and expenses incident thereto. Grantor shall hold harmless and indemnify Holder against any liability incurred by reason of the imposition of any fee, tax or charge on the making and recording of this Deed of Trust.

5.8    **Rights of Holder and Trustee.**

(a)    *Rights Not Limited.* The rights, powers, privileges and discretions (hereinafter collectively called the "rights") specifically granted to the Trustee and those specifically granted to Holder under this Deed of Trust are not in limitation of but in addition to those to which they are entitled under any general or local law relating to deeds of trust and mortgages in the . now or hereafter existing.

(b)    *Benefit to Successors and Assigns.* The rights to which Holder may be entitled shall inure to the benefit of its successors and assigns.

(c)    *Rights Cumulative.* All the rights of Holder and of the Trustee are cumulative and not alternative and may be enforced successively or concurrently.

5.9    **No Waiver.** Failure of Holder or of the Trustee to exercise any of their rights shall not impair any of their rights nor be deemed a waiver thereof, and no waiver of any of their rights shall be deemed to apply to any other such rights, nor shall it be effective unless in writing and signed by the party waiving the right. The acceptance by Holder of any partial payment after default or an Event of Default, with or without knowledge of the default or Event of Default, shall not be a waiver of the default or Event of Default unless Holder shall specifically state in writing that the acceptance waives the default or Event of Default or states further conditions which must be satisfied to constitute such a waiver. The failure of Holder to exercise the option for acceleration of maturity, foreclosure, or either, following an Event of Default or to exercise any other option or privilege granted to Holder hereunder in any one or more instances, shall not constitute a waiver of any such default, but such option or privilege shall remain continuously in force.

5.10    **Mutual Waiver of Jury Trial.** Grantor and Holder (by acceptance of this Deed of Trust) each, on behalf of itself and its successors and assigns, WAIVES to the fullest extent permitted by law all right to TRIAL BY JURY of any and all claims between them arising under this Deed of Trust, the Note, the Loan Agreement, or any other Loan Documents, and any and all claims arising under common law or under any statute of any state or the United States of America, whether any such claims be now existing or hereafter arising, now known or unknown. In making this waiver Holder and Grantor acknowledge and agree that any and all claims made by Holder and all claims made against Holder shall be heard by a judge of a court of proper jurisdiction, and shall not be heard by a jury. Holder and Grantor acknowledge and agree that THIS WAIVER OF TRIAL BY JURY IS A MATERIAL ELEMENT OF THE CONSIDERATION FOR THIS TRANSACTION. Holder and Grantor, with advice of counsel, each acknowledges that it is knowingly and voluntarily waiving a legal right by agreeing to this waiver provision.

5.11    **Waiver by Grantor.** Grantor waives, on behalf of itself and all persons now or hereafter interested in the Property, all rights under all appraisement, homestead, moratorium, valuation, exemption,

Exhibit B, Page 40

*14*

stay, extension, redemption and marshalling statutes, laws or equities now or hereafter existing and agrees that no defense based on any thereof will be asserted in any action enforcing this Deed of Trust. Furthermore, Grantor hereby expressly waives the right or equity of redemption, whether arising under statute, common law, or both. Grantor represents and covenants that the Property forms no part of any property owned, used or claimed by Grantor as a business or residential homestead or as exempt from forced sale and disclaims and renounces all and every such claim thereto.

5.12    **Secondary Market Cooperation.** Grantor acknowledges that Holder may (a) sell this Deed of Trust, the Note and the other Loan Documents to one or more investors as a whole loan, (b) participate the Loan to one or more investors, (c) deposit this Deed of Trust, the Note, and the other Loan Documents with a trust, which trust may sell certificates to investors evidencing an ownership interest in the trust assets or (d) otherwise sell the Loan or interest therein to investors (the transactions referred to in clauses (a) through (d) are hereinafter referred to as "Secondary Market Transactions"). Grantor shall cooperate in good faith with Holder in effecting any such Secondary Market Transaction and shall cooperate in good faith to implement all requirements imposed by any rating agency involved in any Secondary Market Transaction including, without limitation, all structural or other changes to the Loan, modifications to any documents evidencing or securing the Loan, delivery of opinions of counsel acceptable to the rating agency and addressing such matters as the rating agency may require; provided, however, Grantor shall not be required to modify any documents evidencing or securing the Loan which would modify (i) the interest rate payable under the Note, (ii) the stated maturity of the Note, (iii) the amortization of principal of the Note, or (iv) any other material economic term of the Loan. Grantor shall provide such information and documents relating to Grantor, any guarantor of Grantor, the Property and any tenant of the Property as Holder may reasonably request in connection with a Secondary Market Transaction. Holder shall have the right to provide to prospective investors any information in its possession, including, without limitation, financial statements relating to Grantor, any guarantor of Grantor, the Property and any tenant of the Property. Grantor acknowledges that certain information regarding the Loan and the parties thereto and the Property may be included in a private placement memorandum, prospectus or other disclosure documents.

5.13    **Indemnification.** Neither the Trustee nor Holder shall be obligated to perform or discharge any obligation or duty to be performed or discharged by Grantor under any lease. Grantor shall indemnify the Trustee and Holder for and save them harmless from any and all liability arising from any lease or assignment of a lease as security under this Deed of Trust. Neither the Trustee nor Holder shall have any responsibility for the control, care, management or repair of the Property or be liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or injury or death to any lessee or any other person or entity. The obligations and liabilities of Grantor under this paragraph shall survive any termination, satisfaction or assignment of this Deed of Trust and the exercise by Holder of any of its rights or remedies hereunder including, without limitation, the acquisition of the Property by foreclosure or a conveyance in lieu of foreclosure.

5.14    **Binding Effect.** The terms and conditions agreed to by Grantor and the covenants of Grantor shall be binding upon the personal representatives, successors and assigns of Grantor and of each of them, but this provision does not waive any prohibition of assignment or any requirement of consent to an assignment under the other provisions of this Deed of Trust; any consent to an assignment shall not be consent to any further assignment, each of which must be specifically obtained in writing.

5.15    **Recitals.** The recitals of this Deed of Trust are incorporated herein and made a part hereof.

5.16    **Number and Gender.** Wherever used herein the singular shall include the plural and the plural the singular, and the use of any gender shall include all genders.

5.17    **Time of Essence.** Time is of the essence of the obligations of Grantor in this Deed of Trust and each and every term, covenant and condition made herein by or applicable to Grantor.

Exhibit B, Page 41

5.18    **Captions.** The captions of the Sections of this Deed of Trust are for the purpose of convenience only and are not intended to be a part of this Deed of Trust and shall not be deemed to modify, explain, enlarge, or restrict any of the provisions hereof.

5.19    **Severability.** If any provision of this Deed of Trust or the application thereof to any person or circumstance shall be invalid, inoperative or unenforceable to any extent, the remainder of this Deed of Trust and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be valid, operative and enforceable to the greatest extent permitted by law.

5.20    **Execution of Counterparts.** This Deed of Trust may be executed in any number of counterparts and each of such counterparts shall for all purposes be deemed to be an original and all such counterparts shall together constitute but one and the same Deed of Trust.

5.21    **Security Agreement.** Grantor has executed this instrument as a Debtor under the Uniform Commercial Code of the state in which the Property is located. This Deed of Trust shall constitute and be a security agreement and financing statement under the laws of such state.

5.22    **Due On Sale.** Without the prior written consent of Lender, Grantor will abstain from and will not cause or permit any sale, exchange, transfer, lease or conveyance (herein all called "transfer") of all or any part of the Property, or any interest in it, voluntarily or by operation of law. If all or any part of the Property or an interest therein is sold or transferred without Lender's prior written consent, Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable.

5.23    U.S. SMALL BUSINESS ADMINISTRATION PROVISION:

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) .    When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b)    Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

ARTICLE VI. ADDITIONAL COVENANTS

6.1    *Leases of the Property*

6.1.1    *Compliance with Leases.* Grantor shall carry out all of its agreements and covenants as landlord contained in any leases (which word when used in this Deed of Trust shall include, without limitation, all agreements, licenses, contracts, reservations, accounts, and permits affecting all or any part of the Property) and not permit a lien or other encumbrance superior to such leases other than this Deed of Trust. No lease shall include any space, or grant to any tenant any right or interest in any area outside of the limits of the Property. Upon demand of Holder, Grantor shall furnish Holder an executed copy of each lease immediately upon its execution. All future leases shall be written on the standard form accepted by Holder, with only such changes as Holder shall have approved in writing or on a lease agreement approved by Holder.

{01431001;v1 }                                    14

*16*

6.1.2    *Assignment of Leases.* Grantor hereby grants, conveys, assigns, and transfers unto the Trustee, for the benefit of Holder, all the right, title, interest and privileges which Grantor has or may hereafter have in any and all of said leases now existing or hereafter made affecting all or a part of the Property, as said leases may have been or may from time to time be hereafter modified, extended or renewed with all the rents (which word when used in this Deed of Trust shall include, without limitation, all income and profits) due and becoming due therefrom and including without limitation the right of Holder to inspect the leased areas and books and records of tenants. Grantor shall, upon written request by Holder or the Trustee, execute assignments (in any form customarily used by Holder) of any present or future leases, together with the rents due and becoming due therefrom, which affect in any way all or any part of the Property. No such assignment made or required hereby shall be construed as a consent by Trustee or Holder to any lease or to impose on Trustee or Holder any obligation with respect thereto. Grantor shall not make any other assignment, hypothecation or pledge of any rents under any lease of part or all of the Property. Grantor shall not, without the prior written approval of Holder, cancel any of the leases, nor terminate or accept a surrender thereof, nor reduce the payment of rent thereunder, nor modify any of said leases, nor accept any prepayment of rent other than the usual prepayment as would result from the acceptance by landlord more than fifteen (15) days before the first day of each month for the ensuing month under leases approved by Holder according to the terms of such leases. The covenants and restrictions of this subsection shall be deemed covenants and restrictions running with the land.

6.1.3    *Limitation on Subordinate Lienors.* Grantor covenants that Holder of any subordinate lien shall have no right, and shall acquire no right, to terminate or modify any lease affecting the Property whether or not such lease is subordinate to the legal operation and effect of this Deed of Trust.

6.1.4    *Deposit of Rents.* All payments, including security deposits, under any lease received by Grantor shall be deemed held by Grantor in trust for the payment of the Obligations secured hereby. Grantor shall deposit in a non-interest bearing account or accounts with Holder all payments (except security deposits made under residential leases, if any) made under all leases, which sums, subject to the rights of the tenants therein, may be used by Grantor in the ordinary course of Grantor's business to the extent permitted by law, until one or more of the Events of Default shall occur, but not thereafter.

6.1.5    *Assignment of Bankruptcy Awards.* Grantor hereby assigns to the Trustee for the benefit of Holder any award made hereafter to it in any court procedure involving any of the tenants in any bankruptcy, insolvency or reorganization proceeding in any state or federal court and any and all payments by any tenant in lieu of rent.

6.1.6    *Limitation of Liability under Leases.* Neither the Trustee nor Holder shall be obligated to perform or discharge any obligation or duty to be performed or discharged by Grantor under any lease; and Grantor hereby agrees to indemnify the Trustee and Holder for and to save them harmless from, any and all liability arising from any lease, or this assignment thereof and this assignment shall not place the responsibility for the control, care, management or repair of the Property upon the Trustee or Holder, nor make said Trustee or Holder liable for any negligence in the management, operation, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, agent, guest, or stranger.

6.1.7    *Security Deposits.* Grantor shall deposit in an account or accounts with Holder or its designee, under the depository's standard program for such accounts, all security deposits made under residential leases which sums, subject to the rights of the tenants therein, may be used by Grantor in the ordinary course of Grantor's business to the extent permitted by law, until one or more of the Events of Default shall occur, but not thereafter. All such deposits shall be the continuing responsibility of Grantor, and Grantor shall comply with all applicable requirements of applicable law where the Property is located.

6.2    Environmental Covenants

6.2.1    *No Substances Present.* Grantor hereby represents and warrants to Holder that there are not now and have never been any materials or substances located on or near the Property that, under federal, state, or local law, statute, ordinance, or regulation, or administrative or court order or decree, or private agreement (collectively, the "Environmental Laws"), are regulated as to use, generation,

[01431001;v1 ]                                15

collection, storage, treatment, or disposal (such materials or substances are hereinafter collectively referred to as "Substances"). The term "Substances" includes any materials or substances whose release or threatened release may pose a risk to human health or the environment or impairment of property values and shall also include without limitation (i) asbestos in any form, (ii) urea formaldehyde foam insulation, (iii) paint containing lead, (iv) transformers or other equipment which contains dielectric fluid containing levels of polychlorinated biphenyls of 50 parts per million or more, and (v) petroleum in any form. Grantor further represents and warrants to Holder that the Property is not now being used nor has it ever been used in the past for any activities involving the use, generation, collection, storage, treatment, or disposal of any Substances. Grantor will not place or permit to be placed any Substances on or near the Property except for those Substances that are typically used in the operation of Grantor's business provided the same are in appropriately small quantities and are stored, used, and disposed of properly; or Substances that are approved in writing by Holder.

6.2.2    *Acting Upon Presence of Substances.* Grantor hereby covenants and agrees that, if at any time (i) Substances are spilled, emitted, disposed, or leaked in any amount; or (ii) it is determined that there are Substances located on, in, or under the Property other than those of which Holder has approved in writing or which are permitted to be used on the Property without Holder's written approval pursuant to subsection 6.2.1 of this Section, Grantor shall immediately notify Holder and any authorities required by law to be notified, and shall, within thirty (30) days thereafter or sooner if required by Holder or any governmental authority, take or cause to be taken, at Grantor's sole expense, such action as may be required by Holder or any governmental authority. If Grantor shall fail to take such action, Holder may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid, including all sums advanced or paid in connection with any investigation or judicial or administrative proceeding relating thereto, including, without limitation, reasonable attorneys' fees, expert fees, fines, or other penalty payments, shall be at once repayable by Grantor and shall bear interest at the Default Rate, from the date advanced or paid by Holder until the date paid by Grantor to Holder, and all sums so advanced or paid, with interest as aforesaid, shall become a part of the Obligations secured hereby.

6.2.3    *Environmental Audits.* Grantor, promptly upon the written request of Holder from time to time, shall provide Holder, at Grantor's expense, from time to time with an environmental site assessment or environmental audit report, or an update of such an assessment or report, all in scope, form, and content satisfactory to Holder.

6.2.4    *Environmental Notices.* Grantor shall furnish to Holder duplicate copies of all correspondence, notices, or reports it receives from any federal, state, or local agency or any other person regarding environmental matters or Substances at or near the Property, immediately upon Grantor's receipt thereof.

6.2.5    *Condition of Property.* Grantor hereby represents and warrants that there are no wells or septic tanks on the Property serving any other property; no wells or septic tanks on other property serving the Property; no burial grounds, archeological sites, or habitats of endangered or threatened species on the Property; and that no part of the Property is subject to tidal waters; has been designated as wetlands by any federal, state, or local law or governmental agency; or is located in a special flood hazard area.

6.2.6    *Environmental Indemnity.*

6.2.6.1    Grantor shall at all times indemnify and hold harmless Holder and the Trustee against and from any and all claims, suits, actions, debts, damages, costs, losses, obligations, judgments, charges, and expenses, of any nature whatsoever suffered or incurred by Holder or the Trustee, whether as beneficiary of this Deed of Trust, as mortgagee in possession, or as successor-in-interest to Grantor by foreclosure or deed in lieu of foreclosure, under or on account of the Environmental Laws or any similar laws or regulations, including the assertion of any lien thereunder, with respect to:

(a)    any discharge of Substances, the threat of a discharge of any Substances, or the presence of any Substances affecting the Property whether or not the

*18*

same originates or emanates from the Property or any contiguous real estate including any loss of value of the Property as a result of any of the foregoing;

      (b)     any costs of removal or remedial action incurred by the United States Government or any costs incurred by any other person or damages from injury to, destruction of, or loss of natural resources, including reasonable costs of assessing such injury, destruction or loss incurred pursuant to any Environmental Laws;

      (c)     liability for personal injury or property damage arising under any statutory or common law tort theory, including, without limitation, damages assessed for the maintenance of a public or private nuisance or for the carrying on of an abnormally dangerous activity at or near the Property; and/or

      (d)     any other environmental matter affecting the Property within the jurisdiction of the Environmental Protection Agency, any other federal agency, or any state or local environmental agency.

Grantor's obligations under this Agreement shall arise upon the discovery of the presence of any Substance, whether or not the Environmental Protection Agency, any other federal agency or any state or local environmental agency has taken or threatened any action in connection with the presence of any Substances.

## ARTICLE VII.  CALIFORNIA SPECIFIC PROVISIONS

    7.1     **Inconsistencies.**  In the event of any inconsistencies between the terms and conditions of this Article VII and the other provisions of this Deed of Trust, the terms and conditions of this Article VII shall control and be binding.

    7.2     The paragraph beginning "PROVIDED, HOWEVER" appearing at the end of the Recitals section is hereby deleted in its entirety and the following paragraph is substituted therefore:

PROVIDED, HOWEVER, upon written request of Holder stating that all sums secured hereby have been paid, that Grantor has well and truly performed the Other Obligations as set forth in this Deed of Trust, that Grantor has well and truly abided by and complied with each and every covenant condition set forth herein and in the Note, and upon the surrendering of this Deed of Trust and the Note to Trustee for cancellation and retention and upon payment by Grantor of Trustee's fees, Trustee shall reconvey to Grantor, or to the person or persons legally entitled thereto, without warranty, any portion of the estate hereby granted and then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in any reconveyance may be described as "the person or persons legally entitled thereto". Notwithstanding the foregoing, the Grantor's obligation to indemnify and hold harmless Holder pursuant to the provisions hereof with respect to matters relating to any period of time during which this Deed of Trust was in effect shall survive any such payment or reconveyance.

7.3 ·    **Power of Sale.**  For any sale under the power of sale granted by this Deed of Trust, the Holder, its successors and assigns, may elect to cause the Property or any part thereof to be sold as follows:

      (a)     Holder may cause any sale or other disposition to be conducted immediately following the expiration of any grace period if any, herein provided (or immediately upon the expiration of any redemption and period required by law) or Holder may delay any such sale or other disposition for such period of time as Holder deems to be in its best interest. Should Holder desire that more than one such sale or the disposition be conducted, Holder may at its option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and such order as Holder may deem to be in its best interest.

Exhibit B, Page 45

(b)    Both Grantor and Holder shall be eligible to purchase any part or all of such property at any such disposition. Any such disposition may be either public or private as Holder may so elect, subject to the provisions of the Uniform Commercial Code.

(c)    Should Holder elect to sell the Property which is real property or which Holder has elected to treat as real property, upon such election Holder or Trustee shall give Notice of Default and Election to Sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such Notice of Sale as may then be required by law, Trustee, at the time and place specified in the Notice of Sale, shall sell such Property, or any portion thereof specified by Holder, at public auction to the highest bidder for cash in lawful money of the United States, Trustee for good cause may, and upon request of Holder shall, from time to time, postpone the sale by public announcement thereof at the time and place notice therefore. If the Property consists of several of several lots or parcels, Holder may designate the order in which such lots or parcels shall be offered for sale or sold. Any person, including Grantor, Trustee or Holder, may purchase at the sale. Upon any sale Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the property so sold, but without any covenant or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession.

(d)    In the event of the sale or other disposition of any such property, or any part thereof, and the execution of a deed or other conveyance, pursuant thereto, the recitals therein of facts, such as a default, the giving of notice of default and notice of sale, demand that such sale should be made, postponement of sale, terms of sale, sale, purchaser, payment of purchase money, and any other fact affecting the regularity or validity of such sale or disposition, shall be conclusive proof of the truth of such facts; and any such deed of conveyance shall be conclusive against all persons as to such facts recited therein.

(e)    The acknowledgment of the receipt of the purchase money, contained in any deed or conveyance executed as aforesaid, shall be sufficient discharge from all obligations to see to the proper application of the consideration therefore.

(f)    Grantor hereby expressly waives any right which it may have to direct the order in which any of the Property shall be sold in the event of any sale or sales pursuant hereto.

(g)    Upon any sale of the Property, whether made under a power of sale herein granted or pursuant to judicial proceedings, if the holder of the Note is a purchaser at such sale, it shall be entitled to use and apply all or any portion of the indebtedness then secured hereby for or in settlement or payment of all or any portion of the purchase price of the property purchased, and, in such case, this Deed of Trust, the Note and documents evidencing expenditures secured hereby shall be presented to the person conducting the sale in order that the amount of said indebtedness so used or applied may be credited thereon as having been paid.

(h)    No remedy herein conferred upon or reserved to Trustee or Holder is intended to be exclusive of any other remedy herein or by law provided, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this instrument to Trustee or Holder, or to which of them may be otherwise entitled, may be exercised from time to time and as often may be deemed expedient by Trustee or Holder, and either of them pursue inconsistent remedies. If there exists additional security for the performance of the obligations secured hereby, the holder of the Note, at its sole option and without limiting or affecting any rights or remedies hereunder may exercise any of the rights and remedies to which it may be entitled hereunder either concurrently with whatever other rights it may have in connection with such other security or in such offer as it may determine.

Grantor hereby requests that every notice of default and every notice of sale be given in accordance with the provisions of Section 5.4 hereof except as otherwise required by statute. Grantor may, from time to

time. change the address to which notice of default and sale hereunder shall be sent by both filing a request therefor, in the manner provided by the California Civil Code, Section 2924b, and sending a copy of such request to Holder, its successors or assigns in accordance with the provisions of Section 5.4 hereof.

7.4    **Dwellings.** No portion of the proceeds of the Loan shall be used by Grantor to finance the purchase or construction of real property containing four (4) or fewer residential units or on which four (4) or fewer *residential units* are to be constructed. No portion of the Property is or will be a "dwelling" within the meaning of Section 10240.1 or Section 10240.2 of the California Business and Professions Code.

7.5    **Civil Code.** Grantor represents, warrants and acknowledges that the Loan is not subject to the provisions of Chapter 3, Title IV, Part 4, Division Third of the Civil Code of the State of California (Civil Code Sections 1912 et seq.) other than Section 1916.1 thereof.

7.6    **Supplemental Environmental Provisions.** In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Holder's or Trustee's rights and remedies under this Deed of Trust , Holder may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Grantor to judgment and any other rights and remedies permitted by law. For purposes of determining Holder's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Grantor shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous *materials* was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Property and Grantor knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release. Holder shall have the right under Section 6.2.6 of this Deed of Trust to allocate amounts recovered on the Debt first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

7.7    Grantor certifies to Lender that the Property is not community property, as defined by California Family Code Section 760. Grantor acknowledges that Lender is relying on this certification in extending the Loan to Grantor and further acknowledges that any inaccuracy in the foregoing certification shall constitute a default under the Loan documents and this Deed of Trust.

7.8    In accordance with California Civil Code Section 2924b, request is hereby made that a copy of any Notice of Default and a copy of any Notice of Sale under any deed of trust or mortgage with power of sale recorded against the Property be provided to the Trustee and the Lender at the addresses set forth hereinabove at the same time and in the same manner required as though a separate request therefore had been filed by each of theses persons as authorized by Section 2924b.

[Signature and Acknowledgement Page to Follow]

Exhibit B, Page 47

IN WITNESS WHEREOF, Grantor has caused this Deed of Trust to be duly executed on its behalf and its
seal to be hereunto affixed as of the date first above written.

BE COMMERCIAL REAL ESTATE INC

By: _____
  L.T. Butler, President/Secretary


LTB INVESTMENTS

By: _____
  L.T. Butler, President/Secretary


---

ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual
> who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California                    )
County of *San Bernardino* (?)         )

On *April 21*_____, 2016, before me, a Notary Public, personally appeared L.T. Butler, who
proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within
instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his
signatures on the instrument the persons or the entity upon behalf of which the persons acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

```
GRACIELA FELD
Commission # 2011686
Notary Public · California
Los Angeles County
My Comm. Expires Apr 10, 2017
```

EXHIBIT A

PROPERTY DESCRIPTION

1161 Park View Drive, Covina, CA
APN: 8448-019-039 and 8448-019-050

LOT 7 OF TRACT NO. 42505, IN THE CITY OF COVINA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1012 PAGES 65 THROUGH 68 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THAT PORTION OF PROPERTY CONVEYED TO STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION THROUGH THE DOCUMENT RECORDED ON AUGUST 31, 2015 AS INSTRUMENT NO. 20151074579 OF OFFICIAL RECORDS.

{01431001;v1 }

## EXHIBIT B

### PERMITTED ENCUMBRANCES

None

{01-13|001:v1 }

# EXHIBIT C

## LOAN DEFERRAL AND MODIFICATION AGREEMENT (SBA LOAN)

---

Customer Names:  BE Commercial Real Estate Inc and LTB Investments ("Borrowers")

Guarantor Names:  L.T. Butler and Sharon A. Booker ("Guarantors")

Loan:  $3,090,000 loan to Borrowers made by First Bank Financial Center (the "Bank") on or about April 21, 2016, Internal Loan # 100507958 and SBA #8176885008 (the "Loan"), reflected by Promissory Note in same amount signed by Borrowers (the "Note"), Unconditional Guarantees signed by Guarantors (the "Guarantees"), a Deed of Trust executed by Borrowers (the "Deed of Trust"), a "Security Agreement–Commercial" executed by Borrowers (the "Security Agreement"), and other related documents. The Note, Guarantees, Deed of Trust, Security Agreement and other documents executed in connection with the Loan are collectively referred to in this Deferral and Modification Agreement (this "Agreement") as the "Loan Documents").

---

As of June 1, 2018, Borrowers were in default in their payment obligations under the Note. On June 25, 2018, Borrowers brought current all of their principal and interest obligations (other than the monthly installment payment due on June 21, 2018 (the "June Installment")) and concurrently requested that the Bank defer the June Installment and also allow Borrowers to make interest-only payments for the succeeding three months. The Bank has consented to such request on the terms stated in this Agreement.

1.     In consideration of and based on Borrowers' and Guarantors' acknowledgements and agreements set forth in this Agreement, the terms of the Note are modified as follows:

A.     Borrowers are excused from paying the June Installment. (As noted below, this has no effect on the continued accrual of interest under the Note and Borrowers' obligation to pay the entire remaining principal balance owing on the Loan.)

B.     The monthly installments of principal and interest currently due in July, August and September 2018 are each modified so that Borrowers need only pay interest instead of principal and interest on said installments. In addition, Borrowers shall continue to make the monthly deposits into escrow for real estate taxes contemplated in the Note and agreed upon by the Bank and the Borrower in the Loan Documents (the "Monthly Tax Deposits"). Each Monthly Tax Deposit shall be due and payable concurrently with the corresponding monthly interest payment. Based on these modifications, the amounts owing (including the Monthly Tax Deposits) for July, August and September 2018 are due and payable as follows:

i.     $21,159.22 due on July 25, 2018;

        ii.      $21,755.88 due on August 25, 2018; and

        iii.     $21,755.88 due on September 25, 2018.

        C.      Regular monthly installments of principal and interest (plus the Monthly Tax Deposits) shall resume in October 2018. The due date of each future monthly installment (including the Monthly Tax Deposits), beginning with the October 2018 installment, shall be the 25th of the month instead of the 21st of each month as currently due.

    2.      Borrowers and Guarantors acknowledge and agree as follows:

        A.      The monthly installment payment due under the Note on October 25, 2018 shall be the regular contract monthly installment of principal and interest (totaling $21,815.01) and the Monthly Tax Deposit ($3,593.21), for a total monthly payment of $25,408.22.

        B.      Interest on the remaining principal balance of the Loan continues to accrue in accordance with the terms of the Note, and nothing in this Agreement shall affect Borrowers' obligations under the Loan Documents to pay all interest and the remaining principal balance owing on the Loan. In accordance with the Loan Documents, all monthly installment payments made by Borrowers (other than the Monthly Tax Deposits) will be applied first to accrued interest.

        C.      As a result of Borrowers' being relieved of their obligations to (1) pay the June Installment and (2) the principal portion of the monthly installments due in July, August and September 2018 – all as described above – Borrowers' total finance charge, total of payments, optional credit insurance charges (if applicable), and final payment will be greater than the amounts originally disclosed to Borrowers as reflected in the Loan Documents. The reason for this is that Borrowers' interest charges and other fees and charges accrue for the actual number of days the principal payment remains unpaid. (Guarantors separately acknowledge they are obligated under the terms of the Guarantees for these additional amounts.)

        D.      Other than the specific modifications set forth in Section 1 above, the terms and conditions of the Loan as stated in the Loan Documents remain intact and in full force and effect, including without limitation:

        i.      The periodic adjustments of the (a) monthly installments of principal and interest and (b) Monthly Tax Deposits;

        ii.     The Loan's 04/21/2041 maturity date;

        iii.     The Bank's rights in and to the collateral under the Deed of Trust and the Security Agreement; and

        iv.     All of the Bank's rights under the Loan Documents, including without limitation the Bank's rights upon default (including without limitation any default by Borrowers in timely paying the installments as set forth in Section 1 above).

Exhibit C, Page 52

E.    All of Borrowers' and Guarantors' respective obligations under the Loan Documents remain in full force and effect, without offset or defense of any kind or nature.

F.    Borrowers' (and Guarantors') obligations under the Loan Documents to reimburse the Bank for its attorneys' fees and related costs incurred as a result of the above-described default (in the approximate amount of $12,000) remain due and owing – to be paid by Borrowers (and Guarantors in accordance with the Guarantees) on the earlier of (i) the payoff of the Loan, (ii) the Bank's exercise of its remedies following any further defaults by Borrowers, or (iii) the Bank's demand for payment, such demand to be exercised at any time in the Bank's sole discretion.

G.    This Agreement sets forth the entire agreement of the parties with respect to the modification of the Loan and Loan Documents as set forth in this Agreement and supersedes all prior written or oral understandings and agreements with respect thereto. No modification or waiver of any provision of this Agreement shall be effective unless set forth in writing and signed by the parties hereto. If there is any conflict between the terms, conditions and provisions of this Agreement and those of any other agreement or instrument executed by Borrowers or Guarantors, the terms, conditions and provisions of this Agreement shall prevail.

H.    Borrowers and Guarantors each release, acquit and forever discharge the Bank and its directors, officers, employees, agents, attorneys, affiliates, successors, administrators and assigns (the "Released Parties") from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which Borrowers or Guarantors might have because of anything done, omitted to be done, or allowed to be done by any of the Released Parties and in any way connected with the Loan or the Loan Documents occurring prior to the execution of this Agreement, whether known or unknown, foreseen or unforeseen (collectively, the "Released Matters"). In furtherance of this general release, Releasing Parties each acknowledges and waives the benefits of California Civil Code Section 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR [i.e., each Borrower and Guarantor] DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR [i.e., each of the Released Parties].

Borrowers and Guarantors each understands that the effect of waiving any rights under Section 1542 is that they are releasing all unknown or unanticipated claims relating to the Released Matters in addition to any known and anticipated claims.

I.    Borrowers and Guarantors are authorized to enter into this Agreement and did not rely on any representation, assurance or agreement, oral or written, not expressly set forth in this Agreement in reaching their decision to enter into this Agreement.

     J.     Borrowers and Guarantors have each (i) consulted with legal counsel prior to signing this Agreement or (ii) had an opportunity to obtain such counsel and knowingly chose not to do so.

IN WITNESS WHEREOF, the undersigned have entered into this Agreement as of July 19, 2018.

Do not sign this agreement if it contains any blank spaces.
You are entitled to an exact copy of any agreement you sign.
By signing below you certify receipt of exact copy.

FIRST BANK FINANCIAL CENTRE

By: _____
Authorized Signature

BE COMMERCIAL REAL ESTATE INC

By: _____
    L.T. Butler, President/Secretary

LTB INVESTMENTS

By: _____
    L.T. Butler, President/Secretary

L.T. BUTLER

_____

SHARON A. BOOKER

_____

J.      Borrowers and Guarantors have each (i) consulted with legal counsel prior to signing this Agreement or (ii) had an opportunity to obtain such counsel and knowingly chose not to do so.

IN WITNESS WHEREOF, the undersigned have entered into this Agreement as of July 19, 2018.

> Do not sign this agreement if it contains any blank spaces.
> You are entitled to an exact copy of any agreement you sign.
> By signing below you certify receipt of exact copy.

FIRST BANK FINANCIAL CENTRE

By: _____
Authorized Signature

BE COMMERCIAL REAL ESTATE INC

By: _____
L.T. Butler, President/Secretary

LTB INVESTMENTS

By: _____
L.T. Butler, President/Secretary

L.T. BUTLER

_____
SHARON A. BOOKER

_____

# **EXHIBIT D**




**This page is part of your document - DO NOT DISCARD**



## 20181060805



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/18/18 AT 08:00AM**

| FEES: | 23.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |






L E A D S H E E T



201810181040029

00015851612



009409820

SEQ:
01

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED




E08_181018_697_1121

Exhibit D, Page 56

FOR REFERENCE ONLY: 20181060805

RECORDING REQUESTED BY

LAWYERS TITLE COMPANY
AND WHEN RECORDED MAIL TO

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA  92408

05937127

Trustee Sale No. 4242-40     Loan No. Bank 100507958 / SBA 81768850-08     Title Order No.

Space above this line for recorder's use only

## SUBSTITUTION OF TRUSTEE

WHEREAS, BE COMMERCIAL REAL ESTATE INC and LTB INVESTMENTS, Grantor, was the original Trustor, Ethan W. Smith, was the original Trustee, and First Bank Financial Centre, Lender, was the original Beneficiary under that certain Deed of Trust dated 04/21/2016, recorded on 04/28/2016 as Document No. 20160483759 of official records in the office of the Recorder of Los Angeles County, California, and

WHEREAS, First Bank Financial Centre, Lender, the undersigned, is the present Beneficiary under said Deed of Trust, and,

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place of and stead of said original Trustee thereunder.

Now, THEREFORE, the undersigned Beneficiary hereby substitutes CHICAGO TITLE COMPANY, a California corporation, as Trustee of said Deed of Trust.

Exhibit D, Page 57

Trustee Sale No. 4242-40

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number indicates the plural.

DATE: _10/12/18_

First Bank Financial Centre

_mk kty , vP_
Michael Kenworthy, Vice President

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF ___Wisconsin___

COUNTY OF ___Waukesha___

On _10-12-18_ before me, ___Sandra Froemming___, a Notary Public, personally appeared ___Mike Kenworthy___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

                                                         _Wisconsin_
I certify under penalty of perjury under the laws of the State of ~~California~~ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Sandra J. Froemming_
Notary Public in and for said County and State

my commission expires 11/06/20

2

 

This page is part of your document - DO NOT DISCARD





## 20181060806

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**10/18/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 108.00 |

 



LEADSHEET



201810181040029

00015851613



009409820

SEQ:
02

SECURE - 8:00AM




THIS FORM IS NOT TO BE DUPLICATED



E08_181018_69_1121

Exhibit D, Page 59

FOR REFERENCE ONLY: 20181060806

RECORDING REQUESTED BY

LAWYERS TITLE COMPANY.

AND WHEN RECORDED MAIL TO

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA 92408

APN: 8448-019-050 & 039

Space above this line for recorder's use only

Trustee Sale No. 4242-40   Loan No. Bank 100507958 / SBA 81768850-08   Title Order No.
0593717+

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN
YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you
may have the legal right to bring your account in good standing by paying all of your past
due payments plus permitted costs and expenses within the time permitted by law for
reinstatement of your account, which is normally five business days prior to the date set for
the sale of your property. No sale date may be set until approximately 90 days from the date
this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $76,656.76 as of 10/11/2018 and will increase until your account becomes
current.

While your property is in foreclosure, you still must pay other obligations (such as insurance
and taxes) required by your note and deed of trust or mortgage. If you fail to make future
payments on the loan, pay taxes on the property, provide insurance on the property, or pay
other obligations as required in the note and deed of trust or mortgage, the beneficiary or
mortgagee may insist that you do so in order to reinstate your account in good standing. In
addition, the beneficiary or mortgagee may require as a condition to reinstatement that you
provide reliable written evidence that you paid all senior liens, property taxes, and hazard
insurance premiums.
Upon your written request, the beneficiary or mortgagee will give you a written itemization of
the entire amount you must pay. You may not have to pay the entire unpaid portion of your
account, even though full payment was demanded, but you must pay all amounts in default
at the time payment is made. However, you and your beneficiary or mortgagee may mutually
agree in writing prior to the time the notice of sale is posted (which may not be earlier than
three months after this notice of default is recorded) to, among other things, (1) provide
additional time in which to cure the default by transfer of the property or otherwise; or (2)

1

Exhibit D, Page 60

Trustee Sale No. 4242-40

establish a schedule of payments in order to cure your default; or both (1) and (2).
Following the expiration of the time period referred to in the first paragraph of this notice,
unless the obligation being foreclosed upon or a separate written agreement between you
and your creditor permits a longer period, you have only the legal right to stop the sale of
your property by paying the entire amount demanded by your creditor.
To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if
your property is in foreclosure for any other reason, contact:  First Bank Financial Centre, c/o
Rutan & Tucker, LLP, Attn:  Ira G. Rivin, Esq., 611 Anton Blvd., 14th Floor, Costa Mesa, CA
92626, Phone:  (714) 641-3410

Chicago Title Company phone number:  (909) 884-0448 / (800) 722-0824
If you have any questions, you should contact a lawyer or the governmental agency which
may have insured your loan.  Notwithstanding the fact that your property is in foreclosure,
you may offer your property for sale, provided the sale is concluded prior to the conclusion
of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT
ACTION.  NOTICE IS HEREBY GIVEN THAT: CHICAGO TITLE COMPANY, a California
corporation is either the original trustee, or the duly appointed Trustee, or acting as agent for
the trustee or beneficiary under a Deed of Trust dated 04/21/2016, executed by BE
COMMERCIAL REAL ESTATE INC and LTB INVESTMENTS, Grantor, as Trustor, to secure
obligations in favor of First Bank Financial Centre, Lender, as Beneficiary recorded on
04/28/2016 as Document No. 20160483759 of official records in the Office of the Recorder of
Los Angeles County, California, as more fully described on said Deed of Trust, including the
note(s) and any modifications/ amendments thereto for the sum of $3,090,000.00; that the
beneficial interest under said Deed of Trust and the obligations secured thereby are presently
held by the beneficiary; that a breach of, and default in, the obligations for which said Deed
of Trust is security has occurred in that the payment has not been made of:

THE 08/25/2018 PAYMENT OF INTEREST AND TAXES AND ALL SUBSEQUENT
INSTALLMENTS OF PRINCIPAL AND/OR INTEREST, LATE CHARGES, LEGAL FEES AND
DEPOSITS OF TAXES AND/OR INSURANCE. TO CURE THE DEFAULT AND REINSTATE
YOUR LOAN, YOU MUST PAY ALL AMOUNTS THEN DUE AT THE TIME OF REINSTATEMENT,
INCLUDING ANY ADDITIONAL UNPAID AMOUNTS THAT YOU ARE OBLIGATED TO PAY BY
THE TERMS OF THE NOTE AND DEED OF TRUST, SUCH AS, BUT NOT LIMITED TO,
ADVANCES, TAXES, HAZARD INSURANCE, AND OBLIGATIONS SECURED BY PRIOR
ENCUMBRANCES, PLUS TRUSTEE'S AND/OR ATTORNEY'S FEES (INCLUDING PRIOR
ATTORNEYS' FEES INCURRED AS REFLECTED IN THAT CERTAIN "LOAN DEFERRAL AND
MODIFICATION AGREEMENT (SBA LOAN)") AND COSTS AND EXPENSES INCURRED IN
ENFORCING THE OBLIGATION.    Pursuant to California Commercial Code Section
9604(a)(1)(B), the sale may, at the election of the beneficiary, include personal property.

That by reason thereof, the present beneficiary under such Deed of Trust, has executed and
delivered to said Trustee, a written Declaration and Demand for Sale, and has deposited with
said duly appointed Trustee, such Deed of Trust and all documents evidencing the
obligations secured thereby, and has declared and does hereby declare all sums secured

2

Trustee Sale No. 4242-40

thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATE: 10/11/18

First Bank Financial Centre

Michael Kenworthy, Vice President, as beneficiary

3

# EXHIBIT E



This page is part of your document - DO NOT DISCARD





## 20190075070

Pages:
0007

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/25/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 42.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 117.00 |







LEADSHEET



201901251010003

00016203186



009594364

SEQ:
01

SECURE - 8:00AM



THIS FORM IS NOT TO BE DUPLICATED



E08_190125_6

Exhibit E, Page 63

FOR REFERENCE ONLY: 20190075070

Main Document    Page 62 of 4

RECORDING REQUESTED BY

LAWYERS TITLE COMPANY

AND WHEN RECORDED MAIL TO

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA 92408

---

*Space above this line for recorder's use only*

Trustee Sale No. 4242-40                        Title Order No. 05937127
APN 8448-019-050 (previously 8448-019-039)      TRA No. 03181

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 04/21/2016. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED
AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.

---

On 02/27/2019 at 11:00AM, CHICAGO TITLE COMPANY, a California corporation as the duly
appointed Trustee under and pursuant to Deed of Trust recorded on 04/28/2016 as Document No.
20160483759 of official records in the Office of the Recorder of Los Angeles County, California,
executed by: BE COMMERCIAL REAL ESTATE INC and LTB INVESTMENTS, Grantor, as Trustor,
in favor of First Bank Financial Centre, Lender, as Beneficiary, WILL SELL AT PUBLIC AUCTION TO
THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by
cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit
union, or a check drawn by a state or federal savings and loan association, savings association, or
savings bank specified in section 5102 of the Financial Code and authorized to do business in this
state). At:

**by the fountain located at**
**400 Civic Center Plaza**
**Pomona, CA 91766**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County, California describing the land therein:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF ONE
PAGE.
SEE EXHIBIT B ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF TWO
PAGES FOR THE PERSONALTY.

1

Trustee Sale No. 4242-40
Title Order No. 05937127
APN 8448-019-060 (previously 8448-019-039)

Beneficiary Phone:  (714) 641-3410
Beneficiary:  First Bank Financial Centre, c/o Rutan & Tucker, LLP, Attn:  Ira G. Rivin, Esq., 611
Anton Blvd., 14th Floor, Costa Mesa, CA  92626

The property heretofore described is being sold "as is".  The street address and other common
designation, if any, of the real property described above is purported to be:  1161 Park View Drive,
Covina, CA  91724.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other
common designation, if any, shown herein.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should
understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien,
not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle
you to free and clear ownership of the property. You should also be aware that the lien being
auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be
responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear
title to the property. You are encouraged to investigate the existence, priority, and size of outstanding
liens that may exist on this property by contacting the county recorder's office or a title insurance
company, either of which may charge you a fee for this information. If you consult either of these
resources, you should be aware that the same lender may hold more than one mortgage or deed of
trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed
one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g. The
law requires that information about trustee sale postponements be made available to you and to the
public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has
been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you
may call (714) 730-2727 or visit this Internet Web site www.servicelinkasap.com, using the file
number assigned to this case 4242-40. Information about postponements that are very short in
duration or that occur close in time to the scheduled sale may not immediately be reflected in the
telephone information or on the Internet Web site. The best way to verify postponement information is
to attend the scheduled sale.

Said sale will be made, but without covenant or warranty, expressed or implied, regarding title,
possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said
Deed of Trust, with interest thereon, as provided in said note(s), advances, if any, under the terms of
the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by
said Deed of Trust, to-wit:

2

Exhibit E, Page 65

Trustee Sale No. 4242-40
Title Order No. 05937127
APN 8448-019-050 (previously 8448-019-039)

<u>$3,251,758.51</u>  (Estimated)
Accrued interest and additional advances, if any, will increase this figure prior to sale.
The Beneficiary may elect to bid less than their full credit bid.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located and more than three months have elapsed since such recordation.

**SALE LINE PHONE NUMBER:  (714) 730-2727 / Web site address:  www.servicelinkasap.com**

DATE: 1/18/19

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA  92408
(909) 884-0448

_Teresa M. Drake_

Teresa M. Drake, Vice President

Guarantee No.: 05937127

## EXHIBIT A

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 7 of Tract No. 42505, in the City of Covina, County of Los Angeles, State of California, as per map recorded in Book 1012 Pages 65 through 68 inclusive of Maps, in the Office of the County Recorder of said County.

Excepting therefrom that portion of property conveyed to State of California, Department of Transportation though the document recorded on August 31, 2015 as Instrument No. 20151074579 of Official Records.

Also excepting therefrom that portion of said land, as set forth and described by Final Order of Condemnation, recorded May 4, 2016 as Instrument No. 20160508937 of Official Records.

Note: For Information purposes only, the purported street address of said land as determined from the latest County Assessor's Roll is:

1161 PARK VIEW DRIVE, COVINA, California

The Assessor's Parcel Number, as determined from the latest County Assessor's Roll is:

8448-019-050 (Previousaly APN 8448-019-039)

EXHIBIT B

Together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repair, replacements and improvements as of the date of the Deed of Trust or thereafter located thereon (hereinafter sometimes called the "Improvements");

Together with all the walks, fences, shrubbery, driveways, fixtures, equipment, machinery, apparatus, fittings, building materials and other articles of personal property of every kind and nature whatsoever, as of the date of the Deed of Trust or thereafter ordered for the eventual delivery to the Land (whether or not delivered thereto), and all such as are as of the date of the Deed of Trust or thereafter located in or upon any interest or estate in the Land or any part thereof and used or usable in connection with any present or future operation of the Land as of the date of the Deed of Trust or thereafter owned or acquired by Trustor (Grantor), including, without limiting the generality of the foregoing, all heating, lighting, laundry, clothes washing, clothes drying, incinerating and power equipment, engines, pipes, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire-prevention, fire-extinguishing, refrigerating, ventilating, and communications apparatus, television sets, radio systems, recording systems, computer equipment, air-cooling and air-conditioning apparatus, elevators, escalators, shades, awnings, draperies, curtains, fans, furniture, furnishings, carpeting, linoleum and other floor coverings, screens, storm doors and windows, stoves, gas and electric ranges, refrigerators, garbage disposals, sump pumps, dishwashers, washers, dryers, attached cabinets, partitions, ducts and compressors, landscaping, swimming pools, lawn and garden equipment, security systems and including all equipment installed or to be installed or used or usable in the operation of the building or buildings or appurtenant facilities erected or to be erected in or upon the Land; it being understood that all of the aforesaid shall be deemed to be fixtures and part of the Land, but whether or not of the nature of fixtures they shall be deemed and shall constitute part of the security for the Obligations mentioned in the Deed of Trust; and

Together with all and singular the rights, alleys, ways, waters, easements, tenements, privileges, advantages, accessions, hereditaments and appurtenances belonging, or in any way appertaining to the Land and other property descried herein, and the reversions and remainders, earnings, revenues, rents, issues and profits thereof and including any right, title, interest or estate as of the date of the Deed of Trust or thereafter acquired by Trustor (Grantor) in the Land and other property described herein, and

All the right, title and interest (but not the obligations) of Trustor (Grantor), as of the date of the Deed of Trust or thereafter, in and to all present and future accounts, contract rights (including all fees and other obligations set forth in the Lender's commitment to make the Loan), general intangibles, chattel paper, documents and instruments including but not limited to licenses, construction contracts, service contracts, utility contracts, options, permits, public works agreements, bonds, deposits and payments thereunder, relating or appertaining to the Land and other property described herein and its development, occupancy and use, and

Together with any rights to payment for services rendered, whether or not yet earned by performance, arising from the operation of the Improvements or any other facility on the Land, including, without limitation, (1) all accounts arising from the operation of the Improvements and all proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale, exchange, transfer, collection or other disposition or substitution thereof, and (2) all rights to payment

from any consumer credit/charge card organization or entity, including, without limitation, payments arising from the use of the American Express Card, Visa Card, Carte Blanche Card, MasterCard, Diner's Club, or any other credit card, including those existing as of the date of the Deed of Trust or thereafter created or any substitution therefor and all proceeds thereof (whether cash or non-cash, movable or immovable, tangible or intangible) received upon the sale exchange, transfer, collection or other disposition or substitution thereof; and

Together with all of the rents, royalties, revenues, income, proceeds, profits and other benefits paid or payable by parties to the leases for using, leasing, licensing, possessing, occupying, operating from, residing in, selling or otherwise enjoying he Land, the Improvements, and other property securing the Obligations, or any portion thereof.  As used herein, the word "leases" includes any and all leases, subleases, licenses, concessions, reservations, accounts, permits, contracts, and other agreements (oral or written, as of the date of the Deed of Trust or thereafter in effect) which grant a possessory interest or right of occupancy in and to, or the right to use, or affect all or part of the Land, the Improvements, and other property security the Obligations, or any portion thereof; and

Together with all proceeds of and any unearned premiums on any insurance policies covering Property (defined in the Deed of Trust), including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property or any part thereof; and

Together with all proceeds derived from any taking by condemnation or eminent domain proceedings or transfer in place or in anticipation thereof of all or any part of the property described herein and in the Deed of Trust.

All terms not defined herein are defined in the Deed of Trust or the California Commercial Code.

The beneficiary has elected to conduct a unified/mixed collateral sale in accordance with California Commercial Code Section 9604(a)(1)(B).  The sale may, at the election of the beneficiary, include some or all of the personal property generally described herein.

# EXHIBIT F

**Rivin, Ira**

| | |
|---|---|
| **From:** | Drake, Teresa <DrakeT@CTT.com> |
| **Sent:** | Tuesday, March 26, 2019 4:36 PM |
| **To:** | Rivin, Ira |
| **Subject:** | TS 4242-40 / 1161 Park View Drive / BANKRUPTCY FILING |
| **Attachments:** | 2615_001.pdf |

Hello Ira,

*We just received the attached fax with a bankruptcy filing and deed to the debtor. Please provide us with a postponement date as soon as possible. We can postpone to a Monday, Wednesday or Friday for Los Angeles County and the cost for each postponement is $50.00 charged by auction company.*

Thank you,

*Teresa*

**Teresa Drake**
Vice President, Foreclosure Department
Chicago Title Company
560 E. Hospitality Lane
San Bernardino, CA 92408
(909) 384-7920 Direct
(909) 884-0448 / (800) 722-0824 ext. 7920 Office
draket@ctt.com

 **CHICAGO TITLE**
NATIONAL COMMERCIAL SERVICES

**Privileged & Confidential**
**\*\*Be aware! Online banking fraud is on the rise. If you receive an email containing WIRE TRANSFER INSTRUCTIONS call your escrow officer immediately to verify the information prior to sending funds.\*\***

**From:** IRADV6075 <canon6075@ctt.com>
**Sent:** Tuesday, March 26, 2019 4:33 PM
**To:** Drake, Teresa <DrakeT@CTT.com>
**Subject:** Attached Image

NOTICE: The information contained in this message is proprietary and/or confidential and may be privileged. If you are not the intended recipient of this communication, you are hereby notified to: (i) delete the message and all copies; (ii) do not disclose, distribute or use the message in any manner; and (iii) notify the sender immediately.

# fax

CHICAGO TITLE FORECLOSURE DEPT

TO: ~~ATTN:~~ ATTN: TERESA DRAKE   FROM: R TIERNEY

FAX: 909-380-0516   PAGES: 6

PHONE 909-884-0448   DATE: 3-26-2019

RE: TS # 4242-40

☑ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Comments:

PROPERTY REFERENCE ~~the~~

1161 PARK VIEW DRIVE,

COVINA, CA, 91724

BK-2119-bk-12048

CM/ECF - U.S. Bankruptcy Court (v5.2.1 - LIVE)                          Page 1 of 1

United States Bankruptcy Court
Central District of California

## Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below
was filed under Chapter 13 of the United States
Bankruptcy Code, entered on 02/26/2019 at 3:11 PM and
filed on 02/26/2019.



Gregory Sims
11727 Antwerp Ave
Los Angeles, CA 90059
818 390-5998
SSN / ITIN: xxx-xx-1800

The bankruptcy trustee is:

Kathy A Dockery (TR)
801 Figueroa Street, Suite 1850

Los Angeles, CA 90017
(213) 996-4400

The case was assigned case number 2:19-bk-12048-SK to Judge Sandra R. Klein.

In most instances, the filing of the bankruptcy case automatically stays certain collection and
other actions against the debtor and the debtor's property. Under certain circumstances, the
stay may be limited to 30 days or not exist at all, although the debtor can request the court to
extend or impose a stay. If you attempt to collect a debt or take other action in violation of
the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in
this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor,
they are available at our *Internet* home page www.cacb.uscourts.gov or at the Clerk's Office,
255 East Temple Street,, Los Angeles, CA 90012.

You may be a creditor of the debtor. If so, you will receive an additional notice from the
court setting forth important deadlines.

Kathleen J. Campbell
Clerk, U.S. Bankruptcy
Court

Mar 28 2019 04:13 PM ACE One Stop Mail Plus 323 6870365

3/22/19

RECORDING REQUESTED BY

LAWYERS TITLE COMPANY

AND WHEN RECORDED MAIL TO

CHICAGO TITLE COMPANY
FORECLOSURE DEPARTMENT
560 E. HOSPITALITY LANE
SAN BERNARDINO, CA 92408

Space above this line for recorder's use only

Trustee Sale No. 4242-40                    Title Order No. 05937127
APN 8448-018-050 (previously 8448-018-039)   TRA No. 03181

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 04/21/2016.  UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED
AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.

On 02/27/2019 at 11:00AM, CHICAGO TITLE COMPANY, a California corporation as the duly
appointed Trustee under and pursuant to Deed of Trust recorded on 04/28/2016 as Document No.
20160483759 of official records in the Office of the Recorder of Los Angeles County, California,
executed by: BE COMMERCIAL REAL ESTATE INC and LTB INVESTMENTS, Grantor, as Trustor,
in favor of First Bank Financial Centre, Lender, as Beneficiary, WILL SELL AT PUBLIC AUCTION TO
THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by
cash, a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit
union, or a check drawn by a state or federal savings and loan association, savings association, or
savings bank specified in section 5102 of the Financial Code and authorized to do business in this
state), At:

**by the fountain located at**
**400 Civic Center Plaza**
**Pomona, CA 91766**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County, California describing the land therein:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF ONE
PAGE.
SEE EXHIBIT B ATTACHED HERETO AND MADE A PART HEREOF, CONSISTING OF TWO
PAGES FOR THE PERSONALTY.

1

This page is part of your document - DO NOT DISCARD



# 20190168616

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/26/19 AT 10:47AM**

| | |
|---|---|
| FEES: | 45.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 120.00 |

## PCOR SURCHARGE $20.00





LEADSHEET



201902263330014

00016305776



009654489

SEQ:
01

DAR - Counter (Upfront Scan)





THIS FORM IS NOT TO BE DUPLICATED

 

Mar-26-Case 2:19-bk-12048-SK op Doc 18 s Filed 04/19/19                    Desc

**RECORDING REQUESTED BY**

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE
SHOWN BELOW, MAIL TAX STATEMENT TO:

Name  LTB Investments
Street  2017 N. 2nd Avenue
Address  Upland, CA, 91784
City &
State
Zip

Title Order No. _____    Escrow No. _____

02/26/2019

*20190168616*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# Grant Deed

THE UNDERSIGNED GRANTOR (S) DECLARE (S)                    APN: 8448-019-050

DOCUMENTARY TRANSFER TAX IS $ 00.00

☐ unincorporated area    City of Covina, CA

☐ computed on full value of interest or property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

LTB Investments, a California Corporation

*THIS IS A BONAFIDE GIFT
AND THE GRANTEE RECEIVED
NOTHING IN RETURN AP 1/1971*

hereby GRANT(S) to
Gregory Sims - an undivided 2% interest in

the following described real property in the

County of  Los Angeles                    , state of California

LOT 7 OF TRACT NO. 42505, IN THE CITY OF COVINA, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 1012 PAGES 65 THROUGH 66 INCLUSIVE OF MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY (Reference EXHIBIT A)

(Commonly Known as: 1161 Park View Dr, Covina, CA, 91724)

*LTB Investments*

*LT BUTLER*                    *LTB Investments*
                              *L.T. Butler, CEO*

Dated June. 6th. 2018

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF Los Angeles

On Feb 25th 2019                    before me, Kellie Davalos Notary Public
                                   (here insert name and title of the officer)

, notary public, personally appeared  L T Butler
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the state of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

KELLIE DAVALOS
COMM. #2240897
Notary Public - California
LOS ANGELES COUNTY
My Comm. Expires APR. 20, 2022

(This area for official notarial seal)

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

LTB Investments                    2017 N. 2nd Ave                    Upland, CA, 91784
        Name                          Street Address                     City, State & Zip

Exhibit F, Page 75

Case 2:19-bk-12048-SK    Doc 18    Filed 04/19/19                Desc
Mar-26-2019 04:13 PM ACE One Stop Print Plus 213 687 0424

## EXHIBIT A

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Lot 7 of Tract No. 42505, in the City of Covina, County of Los Angeles, State of California, as per map recorded in Book 1012 Pages 65 through 68 inclusive of Maps, in the Office of the County Recorder of said County.

Excepting therefrom that portion of property conveyed to State of California, Department of Transportation though the document recorded on August 31, 2015 as Instrument No. 20151074579 of Official Records.

Also excepting therefrom that portion of said land, as set forth and described by Final Order of Condemnation, recorded May 4, 2016 as Instrument No. 20160508937 of Official Records.

Note: For information purposes only, the purported street address of said land as determined from the latest County Assessor's Roll is:

   1151 PARK VIEW DRIVE, COVINA, California

The Assessor's Parcel Number, as determined from the latest County Assessor's Roll is:

   8448-019-050 (Previousely APN 8448-019-039)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 611 Anton Boulevard, Suite 1400, Costa Mesa, CA 92626.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATICSTAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 26, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kathy A Dockery (TR)**   EFiling@LATrustee.com
- **Roger F Friedman**   rfriedman@rutan.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) April 26, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Gregory Sims
11727 Antwerp Ave.
Los Angeles, CA 90059

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) April 26, 2019, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Sandra R. Klein
ROYBAL BUILDING
255 East Temple Street
Courtroom 1575 15th Floor
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 26, 2019 | Melody Conour | /s/ Melody Conour |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**